Daniel J. Kornstein (DK - 3264)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MITSUBISHI INTERNATIONAL              :
CORPORATION,                                              08 CV 00194(JSR)(GWG)
                                      :
          Plaintiff,
                                      :     **NOTICE OF MOTION**
          -against-
                                      :     ECF Case
INTERSTATE CHEMICAL CORPORATION,
                                      :
          Defendant.
----------------------------------X


     PLEASE TAKE NOTICE that upon the Affidavit of Zack

Ferguson-Steger sworn to on March 26, 2008 and the exhibits

annexed thereto, and plaintiff's Local Rule 56.1(a) Statement,

plaintiff will move this Court before the HONORABLE JED S.

RAKOFF, United States District Judge, at the United States

Courthouse at 500 Pearl Street, New York, New York 10007,

Courtroom 14B, on April 25, 2008, at 4:00 p.m., for an order

pursuant to Fed R. Civ. P. 56 granting summary judgment to

plaintiff, together with such other and further relief as to the

Court may seem just and proper.

3280\\HNOTACG0001.wpd

PLEASE TAKE FURTHER NOTICE that pursuant to this Court's Case Management Plan dated March 12, 2008, answering papers, if any, shall be served on or before April 4, 2008, and reply papers, if any, shall be served on or before April 18, 2008.

Dated:    New York, New York
          March 26, 2008


                              KORNSTEIN WEISZ WEXLER & POLLARD, LLP


                              By:   Daniel J. Kornstein (DK - 3264)

                              757 Third Avenue
                              New York, New York 10017
                              (212) 418-8600

                              Attorneys for Plaintiff


TO:   Leonard F. Lesser, Esq.
      SIMON LESSER PC
      420 Lexington Avenue
      New York, New York 10170
      Attorneys for Defendant

Daniel J. Kornstein (DK - 3264)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MITSUBISHI INTERNATIONAL          :
CORPORATION,                                    08 CV 00194(JSR)(GWG)
                                  :
        Plaintiff,                **AFFIDAVIT**
                                  :
          -against-
                                  :   ECF Case
INTERSTATE CHEMICAL CORPORATION,
                                  :
        Defendant.
----------------------------------X

STATE OF NEW YORK   )
                    )    ss.:
COUNTY OF NEW YORK  )

        ZACK FERGUSON-STEGER, being duly sworn, deposes and says:

        1.  I am the marketing manager of Mitsubishi International
Corporation ("MIC").  I have personal knowledge of the facts set
forth in this affidavit, which I make in support of plaintiff's
motion for summary judgment.

        2.  A copy of the complaint in this action is annexed
hereto as Exhibit 1, and a copy of defendant Interstate Chemical
Corporation's ("Interstate") answer to the complaint is annexed
hereto as Exhibit 2.

        3.  MIC engages in the business of international trade of
products -- including methanol -- and services across a range of
industry sectors.

3250001AFFAC0100001.wpd

### The Oral Agreement

4.   On December 4, 2007, I had a telephone conversation with Lori Cirillo, Director of Chemical Procurement for Interstate, regarding the possibility of MIC selling a barge of methanol to Interstate. During that conversation, Ms. Cirillo and I agreed that MIC would sell one 10 mb (420,000 gallon) barge of methanol to Interstate at a price of $2.55 per gallon, to be loaded on or after December 20, 2007.

5.   Later that day, Ms. Cirillo sent me an email, confirming that Interstate "would like to purchase your Methanol barge. Please give me a call." See Ex. A to Ex. 1.

### Written Confirmation

6.   Less than an hour later, I responded to Ms. Cirillo via email, stating: "We confirm 10 mb @ $2.55/gal loading Dec. 20 or later. If we can ship earlier, we'll inform you. I'll send over a spot contract a little later." See Ex. A to Ex. 1.

7.   The next day, December 5, 2007, I reconfirmed the agreement and its material terms in an email to Ms. Cirillo. I attached a form contract to that email and stated: "Please see the attached contract for the 10mb barge agreed to yesterday." See Ex. B to Ex. 1.

8.   The form contract attached to this December 5, 2007

2

email contains the same material terms MIC and Interstate agreed to the day before.  See Ex. B to Ex. 1.

9.  So far as I am aware, neither Ms. Cirillo nor anybody else at Interstate objected to the terms of the agreement.

### Attempted Cancellation

10. I heard nothing further from Interstate about the agreement until December 18, 2007, when it sought to cancel the contract.  On that day, Ms. Cirillo sent me an email stating: "We are having a problem with this barge.  We are planning to ship this to Owensboro, KY and there is still not coast guard approval yet for receiving barges at this destination.  We do not have another home for this barge.  Can we cancel this barge because of this coast guard issue?"  See Ex. B to Ex. 1.

11. The next day, December 19, 2007, I responded to Ms. Cirillo, stating:  "We can postpone the delivery of the barge if needed but we cannot cancel."  See Ex. B to Ex. 1.

12. A few minutes later, Ms. Cirillo responded to me, repeating Interstate's desire to cancel the agreement and explaining that Interstate's "customer cancel[]ed" and had arranged to receive methanol from another supplier.  See Ex. B to Ex. 1.

13. I responded to Ms. Cirillo shortly thereafter, explaining:

> Unfortunately, we cannot allow you to walk away from this spot contract, even if the customer claims they cannot receive the barge.  We reserved this product in our inventory and if we were to liquidate now, we would have to hold you responsible for the damages, which we calculate to be around $0.35/ gal x 420,000 - $147,000.  This is based on the $2.55/gal price that we fixed compared with the expected sales price today of $2.20/gal.

See Ex. B to Ex. 1.

14. Later on December 19, and again on the following day, Ms. Cirillo reiterated that Interstate would be canceling the contract.  See Ex. B and C to Ex. 1.

15. Later on December 20, I responded to Ms. Cirillo, reminding her of Interstate's contract with MIC and stating:

> As you know, the market is falling, and MIC will suffer substantial damages if it is forced to seek a new buyer for this methanol if you repudiate your obligation to purchase. The contract price is $2.55/gal, and as of the close of business today, we would be able to get only approximately $2.18/gallon on the spot market for this load.  If we are forced to sell the material at a loss we will hold Interstate fully responsible for our damages.
>
> In order to mitigate our damages as much as possible in this falling market, we will seek to sell the material to another buyer by tomorrow, December 21, if we do not receive your confirmation by 10:00 a.m. that Interstate will fulfill its obligations under our agreement.  We will then seek prompt legal recourse to recover the full amount of our losses in connection with that sale from Interstate.

4

See Ex. C to Ex. 1.

16. Interstate did not respond to my December 20, 2007 email.

17. MIC was ready, willing, and able to deliver the methanol to Interstate at the agreed-upon price of $2.55 per gallon.

18. In reliance upon Interstate's promise to purchase the barge of methanol, we reserved the barge of methanol in our inventory until it became clear that Interstate was not going to honor its promise to purchase it.

### Mitigation of Damages

19. On December 21, 2007, after Interstate refused to perform our agreement, MIC attempted to limit its losses by selling the methanol Interstate agreed to purchase to another company, Tauber Petrochemical Company, for $2.05 per gallon, the highest price we could get.  See Ex. D to Ex. 1.

20. As a result, MIC lost $210,000, the difference between the price of the barge of methanol at the $2.55 purchase price Interstate agreed to and the $2.05 price MIC was forced to accept on December 21.

5

21. Interstate had a contract with MIC to purchase a barge of methanol at $2.55 per gallon in December 2007. Because Interstate failed to live up to that agreement, MIC's motion for summary judgment should be granted.

ZACK FERGUSON-STEGER

Sworn to this 26th
day of March, 2008

Notary Public

DIANE G. KNOX
Notary Public, State of New York
No. 02KN6000525
Qualified in New York County
Commission Expires April 12, 2010

6

# EXHIBIT 1

Daniel J. Kornstein (DK - 3264)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
MITSUBISHI INTERNATIONAL                  :
CORPORATION,
                                          :
          Plaintiff,
                                          :    **COMPLAINT**
     -against-
                                          :    ECF Case *08CV00194 (JSR)(FWG)*
INTERSTATE CHEMICAL CORPORATION,
                                          :
          Defendant.
-----------------------------------X

     Plaintiff, by its attorneys Kornstein Veisz Wexler & Pollard,

LLP, for its complaint alleges:


                          FIRST CLAIM
                     (Breach of Contract)

Jurisdiction and Venue

     1.   The Court has subject matter jurisdiction over the

lawsuit under 28 U.S.C. § 1332(a)(1) because plaintiff and

defendant are citizens of different states and the amount in

controversy exceeds $75,000 excluding interest and costs.

     2.   Venue in this District is proper under 28 U.S.C. § 1391.


Parties

     3.   Plaintiff Mitsubishi International Corporation ("MIC") is

a New York corporation with its principal place of business at 655

Third Avenue, New York, New York 10017.  At all relevant times, plaintiff has been engaged in the business of international trade of products and services across a range of industry sectors. Plaintiff is a merchant within the meaning of the Uniform Commercial Code.

4.    Defendant Interstate Chemical Corporation ("Interstate") is, on information and belief, a Pennsylvania corporation with its corporate headquarters located at 2797 Freedland Road, Hermitage, Pennsylvania 16148.  At all relevant times, defendant has been engaged in the business of buying and selling chemical products. Defendant is a merchant within the meaning of the Uniform Commercial Code.

Substantive Allegations

5.    On December 4, 2007, the parties orally agreed that Interstate would buy 420,000 gallons of methanol from MIC at a price of $2.55 per gallon.  On that day, Zack Ferguson-Steger, marketing manager of MIC, and Lori Cirillo, Director of Chemical Procurement of Interstate, had a phone conversation regarding the possibility of MIC selling a barge of methanol to Interstate. During that phone conversation, Ferguson-Steger and Cirillo reached an oral agreement that MIC would sell one barge (420,000 gallons, or 10 mb) of methanol to Interstate at a price of $2.55 per gallon.

6.    The parties confirmed this agreement and its material terms in writing later that day.  Cirillo emailed Ferguson-Steger,

2

confirming: "We would like to purchase your Methanol barge. Please give me a call." A copy of that email and MIC's reply to it are attached hereto as Exhibit A.

7.    Less than an hour later, Ferguson-Steger responded to Cirillo via email, stating: "We confirm 10 mb @ $2.55/gal loading Dec. 20 or later. If we can ship earlier, we'll inform you. I'll send over a spot contract a little later." A copy of this email is also attached hereto as part of Exhibit A.

8.    The next day, December 5, 2007, MIC reconfirmed the agreement and its material terms in an email to Interstate. Ferguson-Steger sent an email to Cirillo, attaching a form contract and stating: "Please see attached contract for the 10mb barge agreed to yesterday." The attached contract contains the same material terms the parties had agreed to the day before. A copy of the email and attached contract, along with later email correspondence between MIC and Interstate, is attached hereto as Exhibit B.

9.    Neither Cirillo nor anybody else at Interstate objected to the terms of the agreement as embodied in the emails sent by MIC on December 4 and 5, 2007.

10.    Interstate said nothing further about the agreement until December 18, 2007, when it sought to cancel the contract. On that day, fourteen days after the parties confirmed their agreement and thirteen days after MIC sent an email and form contract further

3

embodying the agreement, Cirillo sent an email to Ferguson-Steger, stating: "We are having a problem with this barge. We are planning to ship this to Owensboro, KY and there is still not coast guard approval yet for receiving barges at this destination. We do not have another home for this barge. Can we cancel this barge because of this coast guard issue?" A copy of this email is also attached hereto as part of Exhibit B.

   11. The next day, December 19, 2007, Ferguson-Steger responded to Cirillo, stating: "We can postpone the delivery of the barge if needed but we cannot cancel." A copy of that email is also attached hereto as part of Exhibit B.

   12. A few minutes later, Cirillo responded to Ferguson-Steger's email, reiterating Interstate's desire to cancel the agreement. A copy of that email is also attached hereto as part of Exhibit B.

   13. Ferguson-Steger responded to Cirillo shortly thereafter, explaining:

> Unfortunately, we cannot allow you to walk away from this spot contract, even if the customer claims they cannot receive the barge. We reserved this product in our inventory and if we were to liquidate now, we would have to hold you responsible for the damages, which we calculate to be around $0.35/ gal x 420,000 = $147,000. This is based on the $2.55/gal price that we fixed compared with the expected sales price today of $2.20/gal.

A copy of this email is also attached hereto as part of Exhibit B.

4

14.   Later on December 19, and again on the following day, Cirillo reiterated that Interstate would be canceling the contract. A copy of the December 19, 2007 email is also attached hereto as part of Exhibit B. A copy of the December 20, 2007 email and MIC's response to it are attached hereto as Exhibit C.

15.   Later on December 20, Ferguson-Steger responded to Cirillo, reminding her of Interstate's contract with MIC and stating:

> As you know, the market is falling, and MIC will suffer substantial damages if it is forced to seek a new buyer for this methanol if you repudiate you obligation to purchase. The contract price i[s] $2.55/gal, and as of the close of business today, we would be able to get only approximately $2.18/gallon on the spot market for this load.  If we are forced to sell the material at a loss we will hold Interstate fully responsible for our damages.
>
> In order to mitigate our damages as much as possible in this falling market, we will seek to sell the material to another buyer by tomorrow, December 21, if we do not receive your confirmation by 10:00 a.m. that Interstate will fulfill its obligations under our agreement. We will then seek prompt legal recourse to recover the full amount of our losses in connection with that sale from Interstate.

A copy of this email is also attached hereto as part of Exhibit C.

16.   Interstate did not respond to Ferguson-Steger's December 20, 2007 email.

5

17. On December 21, 2007, after Interstate refused to perform the agreement, MIC mitigated its damages by selling the methanol Interstate had agreed to purchase to another company for $2.05 per gallon. The contract reflecting this sale is attached hereto as Exhibit D.

18. The parties had a valid agreement, confirmed in writing, pursuant to N.Y. U.C.C. § 2-201(1).

19. The agreement is also valid pursuant to N.Y. U.C.C. § 2-201(2) because MIC sent Interstate a writing confirming the parties' agreement, Interstate had reason to know the writing's contents, and Interstate did not object to its contents within ten days of receiving it.

20. MIC was willing and able to deliver the methanol to Interstate at the agreed-upon price of $2.55 per gallon.

21. Interstate nevertheless breached the agreement between the parties by refusing to purchase the methanol.

22. Despite MIC's prompt efforts to mitigate its damages, MIC was only able to sell the methanol to another buyer at a price of $2.05 per gallon.

23. As a result of defendant's breach of contract, plaintiff has sustained compensatory damages of $210,000 (420,000 gallons of methanol, sold at a price $.50 per gallon lower than the price agreed to by Interstate) plus interest.

SECOND CLAIM
(Promissory Estoppel)

24. MIC realleges the allegations in paragraphs 1 to 23 of this complaint.

25. Interstate's representative promised MIC's representative, both orally over the telephone and in writing via a later email, that Interstate would purchase a barge of methanol from MIC at the agreed-upon purchase price.

26. In reasonable reliance upon Interstate's promise, MIC reserved the barge of methanol in its inventory.

27. Between the time the parties agreed to the sale of the barge of methanol and the time Interstate initially refused to perform the agreement, the price of methanol had dropped from $2.55 per gallon to approximately $2.20 per gallon. By the time MIC was able to mitigate its damages by selling the barge of methanol to another buyer, the price had dropped further, to $2.05 per gallon.

28. MIC was therefore injured by Interstate's failure to perform the agreement to purchase in the face of falling spot prices for methanol.

29. As a result of its reliance upon Interstate's broken promise to purchase the barge of methanol, plaintiff has sustained compensatory damages of $210,000 (420,000 gallons of methanol, sold at a price $.50 per gallon lower than the price agreed to by Interstate) plus interest.

7

WHEREFORE, plaintiff demands judgment as follows:

a.   On the first claim, awarding plaintiff the sum of $210,000 in compensatory damages plus interest;

b.   On the second claim, awarding plaintiff the sum of $210,000 in compensatory damages plus interest; and

c.   Awarding such other relief as may be just and proper, together with the costs and disbursements of this action.

Dated:   New York, New York
         January 9, 2008


                    KORNSTEIN VEISZ WEXLER & POLLARD, LLP

                    By:   Daniel J. Kornstein (DK - 3264)

                    757 Third Avenue
                    New York, New York 10017
                    (212) 418-8600

                    Attorneys for Plaintiff


8

EXHIBIT A

```
|----------+----------------------------------------------------->
|          |                                                      |
|          |          ZACK FERGUSON-STEGER                        |
|          |                                                      |
|          |          12/04/2007 04:04 PM                         |
|          |                                                      |
|          |                                                      |
|          |                                                      |
|          |                                                      |
|          |                                                      |
|----------+----------------------------------------------------->
  >---------------------------------------------------------------
----------------------------------|
   |
 |
   |
 |
   >-----------------------------------------------------------------
----------------------------------|


|------------------->
|              To: |
|------------------->
  >-------------------------------------------------------+--------|
----------------------------------------------------------+--------|
  |"Lori Cirillo" <lcirillo@interstatechemical.com>
 |        |
 |        |
 |        |
   >-------------------------------------------------------+--------|
----------------------------------------------------------+--------|
|------------------->
|              cc: |
|------------------->
  >-------------------------------------------------------+--------|
----------------------------------------------------------+--------|
  |thomas.reszler@mitsubishicorp.com@MITSUBISHI CORP
 |        |
  |kathy.flood@mitsubishicorp.com
 |        |
 |        |
 |        |
   >-------------------------------------------------------+--------|
----------------------------------------------------------+--------|
|------------------->
|                  |
|------------------->
   >-------------------------------------------------------+--------|
----------------------------------------------------------+--------|
  |
 |        |
   >-------------------------------------------------------+--------|
----------------------------------------------------------+--------|
|------------------->
|                  |
|------------------->
```

```
  >------------------------------------------------------------------
-----------------------------------------------------+--------|
   |
 |        |
  >------------------------------------------------------------------
-----------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
  >-----------------------------------------------------------------
-----------------------------------------------------+--------|
   |
 |        |
  >-----------------------------------------------------------------
-----------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
  >-----------------------------------------------------------------
-----------------------------------------------------+--------|
   |
 |        |
  >-----------------------------------------------------------------
-----------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
  >-----------------------------------------------------------------
-----------------------------------------------------+--------|
   |
 |        |
  >-----------------------------------------------------------------
-----------------------------------------------------+--------|
|------------------->
|                   |
|        Subject:   |
|------------------->
  >-----------------------------------------------------------------
-----------------------------------------------------+--------|
  |Re: Methanol(Document link: ZACK FERGUSON-STEGER)
 |        |
  >-----------------------------------------------------------------
-----------------------------------------------------+--------|
```

Lori,

We confirm 10mb @ $2.55/gal loading Dec 20 or later.
If we can ship earlier, we'll inform you.
I'll send over a spot contract a little later.

Best Regards,

Zack

12/4/2007 3:35:09 PM "Lori Cirillo" <lcirillo@interstatechemical.com>
wrote:
>
>Hi Zack -
>
>We would like to purchase your Methanol barge.
>
>Please give me a call.
>
>Thanks.
>
>Lori Cirillo
>Director of Chemical Procurement
>724-981-3771  #1118

EXHIBIT B

```
|---------+-----------------------------------------------------------------
------>
|         |
|         |              "Lori Cirillo" <lcirillo@interstatechemical.com>
|         |
|         |
|         |
|         |              12/19/2007 02:36 PM
|         |
|         |
|         |
|         |
|         |
|         |
|---------+-----------------------------------------------------------------
------>
  >----------------------------------------------------------------------
----------|
  |
|
  |
  >----------------------------------------------------------------------
----------|


|------------------->
|              To: |
|------------------->
  >-------------------------------------------------------------------------
-------------------------------------------------------------+--------|
  |<zack.ferguson-steger@mitsubishicorp.com>
|         |
|         |
  >-------------------------------------------------------------------------
-------------------------------------------------------------+--------|
|------------------->
|              cc: |
|------------------->
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------
  |
|         |
|         |
|         |
  >-----------------------------------------------------------------
-------------------------------------------------------------+--------|
|------------------->
|                  |
|------------------->
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------
  |
|         |
```

```
  >-------------------------------------------------------------
---------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
  >-------------------------------------------------------------
---------------------------------------------------+--------|
  |
|         |
  >-------------------------------------------------------------
---------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
  >-------------------------------------------------------------
---------------------------------------------------+--------|
  |
|         |
  >-------------------------------------------------------------
---------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
  >-------------------------------------------------------------
---------------------------------------------------+--------|
  |
|         |
  >-------------------------------------------------------------
---------------------------------------------------+--------|
|------------------->
|                   |
|         Subject:  |
|------------------->
  >-------------------------------------------------------------
---------------------------------------------------+--------|
  |RE: Methanol
|         |
  >-------------------------------------------------------------
---------------------------------------------------+--------|
```

I met again with management and unfortunately, I am caught in the middle.
The account can not take the product for 90 days or more and we can't hold
the barge.  Management here is saying they did not sign a contract so they
really feel they should not be obligated to buy the barge or pay a damage
differential.

Again, this puts me in the middle and in a real jam.  Would it help if we
commit to the next spot barge when our tanks are at the level where we can
hold a spot barge?  We can not guarantee when that will be.


Lori Cirillo
Director of Chemical Procurement

724-981-3771  #1118

-----Original Message-----
From: zack.ferguson-steger@mitsubishicorp.com
[mailto:zack.ferguson-steger@mitsubishicorp.com]
Sent: Wednesday, December 19, 2007 11:59 AM
To: Lori Cirillo
Cc: Janice Perilli; kathy.flood@mitsubishicorp.com;
thomas.reszler@mitsubishicorp.com
Subject: RE: Methanol


Lori,

If they prefer to pick-up via T/Ts from our tank, that is fine.
Unfortunately, we cannot allow you to walk away from this spot contract,
even if the customer claims they cannot receive the barge. We reserved
this product in our inventory and if we were to liquidate now, we would
have to hold you responsible for the damages, which we calculate to be
around $0.35/ gal x 420,000 = $147,000.   This is based on the $2.55/gal
price that we fixed compared with the expected sales price today of
$2.20/gal.  We hope that you are able to convince them to take the product

Best Regards,
Zack




12/19/2007 10:40:43 AM "Lori Cirillo" <lcirillo@interstatechemical.com>
wrote:
>
>I just spoke to Al and he tried to squeeze the customer.  We have no
choice but
>
>to cancel because the customer cancelled due to the coast guard
restrictions.
>
>The customer made arrangements to receive TT's of Methanol from Ashland
because
>
>of their inability to receive barges.  We really have no option but to
cancel
>
>on this one.
>
>
>Lori Cirillo
>Director of Chemical Procurement
>724-981-3771  #1118
>
>-----Original Message-----
>From: zack.ferguson-steger@mitsubishicorp.com
>[mailto:zack.ferguson-steger@mitsubishicorp.com]
>Sent: Wednesday, December 19, 2007 10:21 AM
>To: Lori Cirillo

```
>Cc: Janice Perilli; thomas.reszler@mitsubishicorp.com;
>kathy.flood@mitsubishicorp.com
>Subject: RE: Methanol
>
>
>Lori,
>
>We can postpone the delivery of the barge if needed but we cannot cancel.
>Feel free to contact me if you have any questions.
>
>Best Regards,
>
>Zack
>
>12/18/2007 11:26:34 AM "Lori Cirillo" <lcirillo@interstatechemical.com>
>wrote:
>>
>>Zack -
>>
>>We are having a problem with this barge.  We are planning to ship this
>>to Owensboro, KY and there is still not coast guard approval yet for
>receiving
>>barges at this destination.  We do not have another home for this barge.
>>
>>Can we cancel this barge because of this coast guard issue?
>>
>>
>>Lori Cirillo
>>Director of Chemical Procurement
>>724-981-3771  #1118
>>
>>-----Original Message-----
>>From: zack.ferguson-steger@mitsubishicorp.com
>>[mailto:zack.ferguson-steger@mitsubishicorp.com]
>>Sent: Wednesday, December 05, 2007 12:31 PM
>>To: Lori Cirillo
>>Subject: Re: Methanol
>>
>>
>>
>>Lori,
>>
>>Please see the attached contract for the 10mb barge agreed to yesterday.
>>Please sign and fax back.
>>(See attached file: Interstate10mb 12-4-07.doc) Thanks,
>>
>>Zack
>>
>>=================================================================
>>Zack Ferguson-Steger
>>Mitsubishi Int'l Corporation
>>655 Third Ave New York, NY 10017
>>Tel 212-605-2419
>>Fax 212-605-1058
>>Cell 917-847-5323
>>email: zack.ferguson-steger@mitsubishicorp.com
>>=================================================================
```

```
>>
>>12/4/2007 3:35:09 PM "Lori Cirillo" <lcirillo@interstatechemical.com>
>>wrote:
>>>
>>>Hi Zack -
>>>
>>>We would like to purchase your Methanol barge.
>>>
>>>Please give me a call.
>>>
>>>Thanks.
>>>
>>>Lori Cirillo
>>>Director of Chemical Procurement
>>>724-981-3771  #1118
>
>
```



# Mitsubishi International Corporation

655 Third Avenue, New York, NY 10017
Tel: (212) 605-2447    Fax: (212) 605-1058

December 5, 2007

To:    Interstate Chemical co.
Attn:  Lori Cirillo
Fax:   724-981-3675

RE:    Methanol Sales FOB StRose, LA, December 20, 2007

Dear Lori:

We are pleased to reconfirm the details of our sales transaction agreed on December 4, 2007 as follows:

| | |
|---|---|
| 1. Contract type | Sales |
| 2. Contract number | S-MeOH-1284 |
| 3. Seller | Mitsubishi International Corporation |
| | 655 Third Avenue |
| | New York, NY 10017 |
| 4. Buyer | Interstate Chemical Co. |
| | 2797 Freedland Road |
| | Hermitage, PA 16148 |
| 5. Product | Methanol in bulk |
| 6. Shipment | December 20th, 2007. Buyer to provide seller with a five (5) working days notice. Such notice to be received by 12.00 noon EST, any nomination received later will be considered next business day. |
| 7. Quality | As per ASTM D-1152-97 |
| 8. Delivery | FOB IMTT StRose, LA into buyer's nominated barge |
| 9. Volume | 10,000 bbls +/- 5% at buyer's option |
| 10. Price | Fixed and flat at $2.5500/gallon |
| 11. Payment | In US dollars, by wire transfer net thirty (30) days from B/L date into seller's designated account. |
| 12. Inspection | Inspection on both quality and quantity at seller's shore tank prior to the loading at the loading port carried out by an independent surveyor appointed by mutual agreement shall be taken as final. Inspector fees to be equally shared among all parties involved. |
| 13. Maritime conditions | as per charter party |
| 14. Public Terminal Clause | Barges loading at a public terminal are loaded on a first come first served basis only. Mitsubishi International will not be held responsible for any delays incurred due to dock congestion |

| 16. Incoterms | Incoterms 2000 and latest amendments are applicable, unless stated otherwise herein. |
| 17. Law | New York Law to govern this transaction. |
| 18. Others | Mitsubishi International Corp. General Terms and Conditions to apply where not inconsistent with the above. |

| 19. Contact for scheduling | Zack Ferguson-Steger<br>Tel 212-605-2419<br>Fax 212-605-1058<br>Email: zack.ferguson-steger@mitsubishicorp.com |

This confirmation constitutes the entire contract and represents our understanding of the terms and conditions of our agreement. We are pleased to have concluded this transaction with you. Any apparent discrepancies or omissions must be brought to our attention within the next two working days or are deemed waived.

## GENERAL TERMS AND CONDITIONS OF SALE

1. **WARRANTIES:** Seller warrants only that the Goods conform to the description stated on the face hereof. **SELLER HEREBY DISCLAIMS, AND BUYER HEREBY WAIVES, ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, OR ARISING UNDER LAW OR EQUITY OR CUSTOM OF TRADE, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.** No agent, employee or representative of Seller has any authority to bind Seller to any affirmation, representation or warranty concerning the Goods not expressly included herein.

2. **SOLE REMEDY; LIMITATION OF LIABILITY:** Seller's sole liability and Buyer's exclusive remedy in connection with the transaction(s) described on the face hereof will be replacement of any non-conforming goods or, at Seller's option, refund of all or a portion of the purchase price. **IN NO EVENT WILL SELLER BE LIABLE FOR, AND BUYER HEREBY WAIVES ANY RIGHT TO, ANY LOST PROFITS, LOSS OF USE, OR FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES HOWEVER CAUSED AND, WHETHER IN CONTRACT, TORT OR UNDER ANY OTHER THEORY OF LIABILITY, WHETHER OR NOT EITHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.** Buyer shall confirm the accuracy of all shipments, as to the identity, quantity and quality of the Goods upon receipt. Buyer waives all claims of non-conformity with respect to the Goods or their shipment or delivery unless made in writing by Buyer to Seller, specifically stating the details of such non-conformity, within five (5) days after Buyer receives the Goods. Non-conforming goods may be returned to Seller only with prior notice by Buyer to Seller and with Seller's approval for such return. **Seller's liability shall in no event be greater in amount than the purchase price of the Goods in respect of which damages are claimed.** Any action by Buyer for breach of contract must be commenced within one (1) year after the cause of action has accrued.

3. **TAXES; INCREASED COSTS:** Buyer shall pay all taxes, excises, fees or charges with respect to the sale or transportation of the Goods. Any increase in Seller's costs of performance after the date stated in the box marked DATE OF CONTRACT on the face hereof resulting from increased freight rates, increased or additional freight surcharges, additional taxes, duties, assessments or other charges imposed or collected by any governmental or taxing authority, increased insurance rates, and all other additional charges relating to the sale, loading, unloading, delivery, storage, and transportation of the Goods, shall be for Buyer's account.

4. **SHIPMENT:** All shipment or delivery dates are approximate. The date of the bill of lading shall constitute conclusive evidence of the date of shipment. Partial shipment and/or transshipment shall be permitted. No non-conforming tender, or delay or failure in the shipment or delivery of any one lot shall excuse Buyer from accepting tender of any remaining installments hereunder. In case of failure of performance by Buyer hereunder, Seller may defer or suspend further shipments or deliveries or, at its option, cancel this Contract as to any Goods which have not been



# Mitsubishi International Corporation

655 Third Avenue, New York, NY 10017
Tel: (212) 605-2447     Fax: (212) 605-1058

shipped or delivered, and any losses, liabilities, costs or expenses resulting from such deferral or cancellation shall be for Buyer's account.

5.     **BUYER'S SOLVENCY; PURCHASE MONEY SECURITY INTEREST:** Buyer represents and warrants to Seller that it is not insolvent, as that term is defined in the Uniform Commercial Code (U.C.C.). Buyer hereby grants to Seller a purchase money security interest in the Goods identified on the face hereof.

6.     **FORCE MAJEURE:** Seller shall not be liable for any delay of or failure to perform its obligations hereunder for any cause beyond its reasonable control, which affects Seller or any other person (whether known or unknown to Buyer) involved in the sale, manufacturing, supply, shipment or delivery of the Goods. Shipment or delivery dates shall be extended for a period equal to the time lost by reason of any such cause; provided, however, that if any such delay exceeds ninety (90) days, either party shall have the right to cancel this Contract with respect to such shipment or delivery by written notice to the other party without any liabilities to the other party. Force majeure shall not excuse any nonpayment by Buyer. Except as otherwise provided herein, U.C.C. Section 2-615 shall govern the rights of both parties hereto in the event of such delay or non-performance.

7.     **INDEMNIFICATION:** Seller shall not be liable to Buyer in any way for losses, liabilities, settlements, costs or expenses (including attorneys' fees) paid or incurred by Buyer resulting from any claim that the Goods or their sale infringe any patent, trademark, copyright, design or other intellectual or industrial property right of any third party and, if Buyer has furnished the specifications for the Goods, Buyer shall indemnify and defend Seller against any and all losses, liabilities, settlements, costs and expenses (including attorneys' fees) paid or incurred by Seller resulting from any such claim. Buyer agrees to defend, indemnify and hold Seller harmless against claims by any third party (including Buyer's employees and customers) arising out of Buyer's use, storage, handling or resale of the Goods.

8.     **LATE CHARGE; SETOFF RIGHTS; COLLECTION COSTS:** If any invoice amount is not paid in full when due, Seller reserves the right to request advance payment for future shipments. If any of the purchase price is not paid in full when due, Buyer shall pay a late charge on the amount unpaid for each day from the due date until paid in full at a rate of five percent above the prime commercial lending rate announced from time to time by the Chase Manhattan Bank, N.A. at its principal New York City office or the maximum lawful rate allowed under permitted applicable law, whichever is lower. Late charges shall be payable upon demand. The parties hereby agree that if for any reason, Buyer has not made payment in full to Seller for any amount owing to Seller on or prior to the due date for such amount, Seller may, in its sole discretion, set off such outstanding amount against any amount owed by Seller that is or becomes due and payable. In the event that Buyer fails to cure any nonpayment within thirty (30) days after Buyer's receipt of notice from Seller describing such breach, then Buyer agrees to pay all of Seller's costs of collection, including, but not limited to, reasonable attorneys' fees.

9.     **TERM AND TERMINATION:** This Contract shall take effect on the DATE OF CONTRACT on the face hereof. Either party may terminate this Contract immediately without giving notice under the following conditions associated with the other party: (1) Insolvency or bankruptcy; (2) Assignment for the benefit of creditors; (3) Expropriation of business assets; (4) Dissolution or liquidation; or (5) Appointment of a trustee or receiver for all or any part of assets. Seller may terminate this Contract in the event that Buyer fails to cure any breach of the Contract within thirty (30) days after Buyer's receipt of notice from Seller describing such breach. Purchase orders confirmed by Seller cannot be cancelled or modified by Buyer without the prior written consent of Seller.

10.     **ENTIRE AGREEMENT; AMENDMENT AND NON-WAIVER:** Acceptance of Buyer's purchase order is expressly conditioned upon Buyer's acceptance of the terms and conditions herein and the exclusion of any conflicting terms that may be contained in Buyer's purchase order. Any objection to any terms herein must be in writing and shall not be deemed timely unless received by Seller within seven (7) days of the date of this Contract. This Contract, including the face hereof, is intended by the parties as the final, complete, and exclusive expression of their agreement relating to the subject matter hereof, and supersedes any prior agreement or understanding between them. No parol evidence, course of dealing, conduct, performance or usage of the trade shall be relevant to supplement or explain it. No waiver, amendment modification of any of the provisions hereof shall be effective, unless made in writing and signed by both parties. Failure by either party to exercise or enforce any right conferred by this Contract shall not be deemed to be a waiver of any such right nor operate so as to bar the exercise or enforcement thereof or any other right on any later occasion.

11.    NO ASSIGNMENT: Buyer shall not assign its rights or delegate its duties under this Contract without the prior written consent of Seller.

12.    GOVERNING LAW; ARBITRATION: This Contract shall be governed by and construed in accordance with the law of the State of New York, without regards to its choice-of-law provisions. The U.N. Convention on Contracts for the International Sale of Goods shall not apply to any purchases made hereunder. Seller and Buyer agree that any controversy or claim arising out of or relating to this Contract, or the breach hereof, shall be settled by arbitration in New York, New York, in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The award of the arbitrator(s) shall be final and binding upon the parties hereto and judgment on the award may be entered in any court of competent jurisdiction.
jurisdiction.

13.    SELLER'S RIGHT FOR DEMANDING ADEQUATE ASSURANCE: If Buyer's failure to make payment or otherwise perform its obligations hereunder is reasonably anticipated, Seller may demand adequate assurance, satisfactory to Seller, of the due performance of this Contract by Buyer and withhold shipment or delivery of the undelivered Goods. Unless Buyer gives Seller such assurance within forty-eight (48) hours of Seller's demand, Seller may, without prejudice to any other remedies it may have, cancel the portion of this Contract which relates to the undelivered Goods, and all accounts payable by Buyer to Seller for the Goods delivered under this contract shall, upon Seller's declaration, become immediately due and payable in cash in full.

14.    SELLER'S RIGHTS AND REMEDIES: If any of the following events shall occur:(a) failure by the Buyer to perform any provision of this Contract or any other agreement with Seller, if any, and such failure not being cured within thirty (30) days after the date of notice thereof being dispatched by the Seller to the Buyer requiring the Buyer to remedy such failure;(b) insolvency, bankruptcy, liquidation or dissolution of the Buyer;(c) institution of any proceeding against the Buyer under the provisions of any insolvency or bankruptcy law or any law for the relief of debtors;(d) appointment of a trustee, receiver, administrator or liquidator over any of the Buyer's assets or property;(e) issuance of an order for the attachment of the Buyer's assets or property; (f) general assignment by the Buyer for the benefit of Seller's creditors; (g) cancellation or deduction of trade credit insurance coverage insured for Seller against risk of Buyer's failure to make the payment of contract price or any other amount payable by Buyer to Seller hereunder in such way as Seller reasonably judges that such cancellation or deduction would impair Seller's interest or benefit from this Contract, or (h) any material adverse change (as determined by MIC in its sole discretion) shall have occurred in (x) Buyer's financial condition or (y) Buyer's business, or any other change shall have occurred that may have an adverse effect on Buyer's ability to perform its obligations under this Contract, then the Seller may, without prejudice to the other rights and remedies which it may have,(i) forthwith terminate this Contract in whole or in part by notice in writing to the Buyer,(ii) delay or suspend shipment or delivery of the Goods,(iii) stop the Goods in transit, and/or (iv) forthwith demand immediate payment of all sums payable by the Buyer under this Contract or any other agreement with the Buyer, whereupon the same shall become immediately due and payable.


Interstate Chemical Co.            Mitsubishi International Corp.



_____            _____
By:                                By:
Title:                             Title:

EXHIBIT C

```
|---------+---------------------------------------------------->
|         |                                                    |
|         |             ZACK FERGUSON-STEGER                   |
|         |                                                    |
|         |             12/20/2007 06:09 PM                    |
|         |                                                    |
|         |                                                    |
|         |                                                    |
|         |                                                    |
|         |                                                    |
|---------+---------------------------------------------------->
  >-----------------------------------------------------------------
------------------------------|
  |
|  |
|  .
| .
  >-----------------------------------------------------------------
------------------------------|


|------------------->
|              To: |
|------------------->
  >-----------------------------------------------------------------
------------------------------------------------------------+--------|
  |"Lori Cirillo" <lcirillo@interstatechemical.com>
|          |
|          |
  >-----------------------------------------------------------------
------------------------------------------------------------+--------|
|------------------->
|              cc: |
|------------------->
  >-----------------------------------------------------------------
------------------------------------------------------------+--------|
  |"Albert R. Puntureri" <apuntureri@interstatechemical.com>
|          |
  |thomas.reszler@mitsubishicorp.com@MITSUBISHI CORP
|          |
  |kevin.fallon@mitsubishicorp.com
|          |
  |DIANE KNOX/AM/MITSUBISHI CORP@MITSUBISHI CORP
|          |
|          |
  >-----------------------------------------------------------------
----------------------------------------------------------+--------|
|------------------->
|                  |
|------------------->
  >-----------------------------------------------------------------
--------------------------------------------------------+--------|
  |
|          |
```

```
   >---------------------------------------------------------------
-----------------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
   >---------------------------------------------------------------
-----------------------------------------------------------+--------|
   |
|          |
   >----------------------------------------------------------------
-----------------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
   >---------------------------------------------------------------
-----------------------------------------------------------+--------|
   |
|         |
   >---------------------------------------------------------------
-----------------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
   >---------------------------------------------------------------
-----------------------------------------------------------+--------|
   |
|        |
   >---------------------------------------------------------------
-----------------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
   >---------------------------------------------------------------
-----------------------------------------------------------+--------|
   |
|        |
   >---------------------------------------------------------------
-----------------------------------------------------------+--------|
|------------------->
|         Subject:  |
|------------------->
   >---------------------------------------------------------------
-----------------------------------------------------------+--------|
   |Re: Methanol(Document link: DIANE KNOX)
|        |
   >---------------------------------------------------------------
-----------------------------------------------------------+--------|
```

Dear Lori

It appears that your legal department may have offered you an opinion about
Interstate's obligation without having all the facts.  Even without a
signed writing, we clearly have a contract for the sale of 10mb of methanol
@$2.55/gal., and we expect Interstate to honor that contract.

As you know, the market is falling, and MIC will suffer substantial damages if it is forced to seek a new buyer for this methanol if you repudiate your obligation to purchase.  The contract price is $2.55/gal, and as of the close of business today, we would be able to get only aproximately $2.18/gallon the spot market for this load.  If we are forced to sell the material at a loss we will hold Interstate fully responsible for our damages.

In order to mitigate our damages as much as possible in this falling market, we will seek to sell the material to another buyer tomorrow, December 21, if we do not receive your confirmation by 10:00 a.m. that Interstate will fulfill its obligations under our agreement.  We will then seek prompt legal recourse to recover the full amount of our losses in connection with that sale from Interstate.

You may want to explain more fully to your legal department our course of dealing in connection with Interstate's purchase.  On December 4, you and I reached an oral agreement that Interstate would purchase 10mb of methanol at a price of 2.55/gal., for delivery December 20 or later.  You confirmed the purchase by email that same day, and I responded to your email with a confirming email of my own shortly thereafter.  You later sought to "cancel" the purchase by an email dated December 18 (when we were out of the office).

Even in the absence of a signed writing, we clearly have an enforceable contract for this purchase.  You may want to refer your legal department to UCC 2-201(2) if they are under the impression that our contract requires a signed writing to be enforceable.

   I remain hopeful that we might be able to go forward with this deal and with a continuing mutually beneficial business relationship.

I look forward to hearing from you.

Zack

============================================================
Zack Ferguson-Steger
Mitsubishi Int'l Corporation
655 Third Ave New York, NY 10017
Tel 212-605-2419
Fax 212-605-1058
Cell 917-847-5323
email: zack.ferguson-steger@mitsubishicorp.com
============================================================

12/20/2007 11:49:49 AM "Lori Cirillo" <lcirillo@interstatechemical.com>
wrote:
>
>Zack -
>
>After speaking to our legal department, I am told that placement of an
order
>does not constitute a contract.  Our verbal cancellation took place 6 to 7
days
>

>prior to the ship/load date of the barge.  Interstate is not obligated to
>purchase a barge when our tanks are full.  When our manufacturing plant calls
>
>for additional inventory, then we can pursue a new purchase order with
>Mitsubishi at prevailing pricing, whether up or down from the current
>$2.55/gallon price level.
>
>Lori Cirillo
>Director of Chemical Procurement
>724-981-3771  #1118

EXHIBIT D

CONTRACT#:07-2068
TO:        MITSUBISHI INT'L CORPORATION
ATTN:      THOMAS RESZLER
FROM:      STARSUPPLY GFI
DATE:      21 DECEMBER 2007

The Client and Starsupply, A Division of GFI Brokers LLC ("GFI") agree that this communication confirms the terms and conditions of the transaction entered into as of the trade date specified below as follows:
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
MITSUBISHI INT'L CORPORATION / TAUBER PETROCHEMICAL COMPANY METHANOL SALE DATED DECEMBER 21, 2007
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
FOLLOWING IS CONFIRMATION OF SALE BETWEEN MITSUBISHI INT'L CORPORATION AND TAUBER PETROCHEMICAL COMPANY FOR A TOTAL OF APPROXIMATELY 10,000 BARRELS OF METHANOL

**SELLER:**
MITSUBISHI INT'L CORPORATION
655 THIRD AVE
NEW YORK, NY 10017
ATTENTION: THOMAS RESZLER
FAX: +12126051058

**BUYER:**
TAUBER PETROCHEMICAL COMPANY
55 WAUGH DRIVE
SUITE 700
HOUSTON, TX 77007
ATTENTION: STEVE ELLIOTT
FAX: +17138628226

**PRODUCT:**
METHANOL

**VOLUME:**
10,000 BARRELS, PLUS/MINUS 5 PERCENT IN BUYER'S OPTION.

**PRICE:**
USD 2.05 PER GALLON

**QUALITY**
METHANOL ASTM-D1152-97

**DELIVERY:**
F.O.B. ST. ROSE, LA INTO BUYER'S NOMINATED BARGE OR VESSEL AT SELLER'S BERTH

**DELIVERY DATES:**
DECEMBER 21, 2007 - JANUARY 10, 2008 , BUYER TO PROVIDE SELLER WITH 5 WORKING DAYS NOTICE OF LOADING

**LAYTIME AND DEMURRAGE AT LOAD**
PER CHARTER PARTY

**PAYMENT:**
IN USD VIA WIRE TRANSFER 30 (THIRTY) DAYS FROM B/L DATE INTO SELLER'S DESIGNATED ACCOUNT

**GENERAL TERMS AND CONDITIONS:**
PER BARGE/VESSEL CHARTER PARTY

**COMMISSION:**
USD 630.00 PAYABLE BY MITSUBISHI INT'L CORPORATION WITHIN THIRTY (30) DAYS AFTER CARGO LOAD AND RECEIPT OF INVOICE.

WE THANK YOU FOR THE OPPORTUNITY OF ARRANGING THIS TRANSACTION ON YOUR BEHALF. WE WOULD APPRECIATE YOUR CONFIRMATION THAT THE ABOVE ACCURATELY RECORDS THE AGREEMENT AS ARRANGED.

VERY TRULY YOURS,
STARSUPPLY GFI - A DIVISION OF GFI BROKERS LLC

Buyer and Seller understand that GFI has acted as agent for both parties solely for the purposes of matching up the parties for the transaction. GFI shall have no liability to any party if any party is for any reason prohibited or restricted from entering into this transaction. The fee charged to you in this transaction is a negotiated fee, which may not be the same as charged in similar transactions. The fee is payable upon receipt of our invoice.

All aspects and terms of the transaction were determined and agreed to solely by the Buyer and Seller and compliance with the terms of

this transaction is strictly their obligation. In the event of an error please contact GFI immediately but no later than 24 hrs after receipt of the confirmation. If any dispute occurs, the Buyer and Seller agree to hold GFI, its affiliates and their respective successors harmless from any liabilities, which may result therefrom. This Confirmation shall inure to the benefit of GFI, its affiliates and their respective successors.

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| MITSUBISHI INTERNATIONAL CORPORATION, | 08 Civ. 00194 (JSR)(GWG) |
| Plaintiff, | |
| -against- | **ANSWER** |
| INTERSTATE CHEMICAL CORPORATION, | |
| Defendant. | |

Case 1:08-cv-00194-JSR     Document 6     Filed 02/28/2008     Page 1 of 5

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Defendant Interstate Chemical Corporation ("Interstate"), by its attorneys, Simon Lesser

PC, hereby answers and responds to the complaint filed by plaintiff Mitsubishi Chemical

Corporation ("MIC") in this matter.

These responses are made without waiving, but expressly reserving, all rights that

Interstate has to file appropriate motions addressed to some or all of the claims asserted therein.

"First Claim"

     1.    The allegations in Paragraph 1 assert legal conclusions to which no response is

required. To the extent a response is required, Interstate admits that it is a citizen of

Pennsylvania and that based upon the assertions in the complaint, the amount in controversy

exceeds $75,000.

     2.    The allegations in Paragraph 2 assert legal conclusions to which no response is

required. To the extent a response is required, the allegations of this paragraph are denied.

     3.    Interstate lacks information sufficient to respond to the allegations contained in

Paragraph 3.

     4.    In response to Paragraph 4, Interstate admits that it is a Pennsylvania based

corporation engaged in chemical manufacturing and distribution.

5.      In response to Paragraph 5, Interstate admits that on December 4, 2007, the

parties had a phone conversation regarding the possibility of MIC selling a barge of methanol to

Interstate on December 20, 2007 or later.  The allegations are otherwise denied.

6.      In response to Paragraph 6, Interstate refers to the documents referenced which

speak for themselves.  The allegations are otherwise denied.

7.      In response to Paragraph 7, Interstate refers to the documents referenced which

speak for themselves.  The allegations are otherwise denied.

8.      In response to Paragraph 8, Interstate refers to the documents referenced which

speak for themselves.  The allegations are otherwise denied.

9.      Interstate denies the allegations contained in Paragraph 9.

10.     Interstate denies the allegations contained in Paragraph 10, and otherwise refers to

the documents referenced which speak for themselves.

11.     In response to Paragraph 11, Interstate refers to the documents referenced which

speak for themselves.  The allegations are otherwise denied.

12.     In response to Paragraph 12, Interstate refers to the documents referenced which

speak for themselves.  The allegations are otherwise denied.

13.     In response to Paragraph 13, Interstate refers to the documents referenced which

speak for themselves.  The allegations are otherwise denied.

14.     In response to Paragraph 14, Interstate refers to the documents referenced which

speak for themselves.  The allegations are otherwise denied.

15.     In response to Paragraph 15, Interstate refers to the documents referenced which

speak for themselves.  The allegations are otherwise denied.

16.     Interstate denies the allegations contained in Paragraph 16.

17.    Upon information and belief, Interstate denies the allegations contained in

Paragraph 17.

18.    Interstate denies the allegations contained in Paragraph 18.

19.    Interstate denies the allegations contained in Paragraph 19.

20.    Interstate lacks information sufficient to respond to the allegations contained in

Case 1:08-cv-00194-JSR    Document 6    Filed 02/28/2008    Page 3 of 5

Paragraph 20.

21.    Interstate denies the allegations contained in Paragraph 21.

22.    Upon information and belief, Interstate denies the allegations contained in

Paragraph 22.

23.    Interstate denies the allegations contained in Paragraph 23.

"Second Claim"

24.    Interstate incorporates by reference its responses above as its response to

Paragraph 24.

25.    Interstate denies the allegations contained in Paragraph 25.

26.    Interstate denies the allegations contained in Paragraph 26.

27.    Interstate denies the allegations contained in Paragraph 27.

28.    Interstate denies the allegations contained in Paragraph 28.

29.    Interstate denies the allegations contained in Paragraph 29.

## FIRST AFFIRMATIVE DEFENSE

30.    The Complaint fails to state a claim for breach of contract upon which relief may

be granted.

## SECOND AFFIRMATIVE DEFENSE

31.    The Complaint fails to state a claim for promissory estoppel upon which relief may be granted.

## THIRD AFFIRMATIVE DEFENSE

32.    Venue is not appropriate in this Court.

## FOURTH AFFIRMATIVE DEFENSE

33.    Plaintiff's claims are barred in whole or part by the statute of frauds.

## FIFTH AFFIRMATIVE DEFENSE

34.    Plaintiff suffered no damages by reason of defendant's alleged conduct.

## SIXTH AFFIRMATIVE DEFENSE

35.    Plaintiff's claims are barred because the relief requested relief would result in unjust enrichment.

## SEVENTH AFFIRMATIVE DEFENSE

36.    Plaintiff failed to reasonably mitigate any alleged damages.

## EIGTH AFFIRMATIVE DEFENSE

37.    Defendant's performance under the alleged contract was excused due to a *force majeure*.

## NINTH AFFIRMATIVE DEFENSE

38.    Defendant's performance under the alleged contract was excused due to impossibility.

## TENTH AFFIRMATIVE DEFENSE

39.    Defendant hereby gives notice that it intends to rely upon all other defenses that may become apparent during the course of this action.

WHEREFORE, defendant Interstate Chemical Corporation requests a judgment against plaintiff Mitsubishi International Corporation:

(a)    Dismissing this action with prejudice; and

(b)    Awarding such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, defendant Interstate

Chemical Corporation hereby demands a trial by jury of any issue triable of right by a jury.

Dated: New York, New York
February 28, 2008

SIMON·LESSER PC

By: _____
    Leonard F. Lesser, Esq.
    420 Lexington Avenue
    New York, New York 10170
    T:212.599.5455
    F:212.599.5459
    llesser@simonlesser.com

    Attorneys for defendant Interstate Chemical
    Corporation

5