UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MITSUBISHI INTERNATIONAL           :
CORPORATION,
                                   :
                Plaintiff,              08 CV 00194 (JSR) (GWG)
                                   :
        -against-
                                   :
INTERSTATE CHEMICAL CORPORATION,
                                   :
                Defendant.
----------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR SUMMARY JUDGMENT**


Kornstein Veisz Wexler & Pollard, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600
Attorneys for Plaintiff
Mitsubishi International Corporation

## TABLE OF CONTENTS

Page(s)

Why Summary Judgment Is Proper . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . 3

      The Parties . . . . . . . . . . . . . . . . . . . . . . . 3

      The Agreement . . . . . . . . . . . . . . . . . . . . . . 3

      Interstate's Breach . . . . . . . . . . . . . . . . . . . 5

      MIC Mitigates Damages . . . . . . . . . . . . . . . . . . 7

THIS PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . 7

SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . 8

ARGUMENT

I     SINCE INTERSTATE FAILED TO TAKE DELIVERY AND PAY
      FOR THE METHANOL AS AGREED, IT BREACHED ITS AGREEMENT
      WITH MIC . . . . . . . . . . . . . . . . . . . . . . . . 9

II    SINCE MIC RELIED ON INTERSTATE'S PROMISE TO BUY
      METHANOL,AND INTERSTATE BROKE THAT PROMISE, MIC
      IS ENTITLED TO SUMMARY JUDGMENT ON THAT THEORY,
      AS WELL . . . . . . . . . . . . . . . . . . . . . . . . 15

III   SINCE INTERSTATE HAS NOT PROPERLY PLEADED ITS
      AFFIRMATIVE DEFENSES, AND SINCE ITS ALLEGED
      "COAST GUARD ISSUE" WAS NEITHER EXTREME NOR
      UNANTICIPATED, INTERSTATE HAS RAISED NO VALID
      EXCUSE FOR ITS FAILURE TO PERFORM . . . . . . . . . . 16

      A. No Facts Pleaded . . . . . . . . . . . . . . . . . . . 16

      B. No Substance . . . . . . . . . . . . . . . . . . . . . 17

         1. No Impossibility . . . . . . . . . . . . . . . . 18

         2. No Force Majeure . . . . . . . . . . . . . . . . 20

IV    SINCE MIC PROMPTLY SOLD TO AVOID FURTHER
      FALLING PRICES, IT TOOK ALL REASONABLE STEPS
      TO MITIGATE DAMAGES  . . . . . . . . . . . . . . . . .  21

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . .  22

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,
     531 F. Supp. 2d 620 (S.D.N.Y. 2008) . . . . . . . . . . 17

B & R Textile Corp. v. Domino Textiles Inc.,
     77 A.D.2d 539, 430 N.Y.S.2d 89(1st Dep't 1980) . . . . . 12

Bazak Int'l Corp. v. Mast Indust., Inc.,
     73 N.Y.2d 113, 538 N.Y.S.2d 503 (1989) . . . . . 10, 12, 14

Bazak Int'l Corp. v. Tarrant Apparel Group,
     378 F. Supp. 2d 377 (S.D.N.Y. 2005) . . . . . . . . . . 10

Celotex Corp. v. Catrett,
     477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . 8

Esquire Radio & Electronics, Inc. v. Montgomery
     Ward & Co., Inc., 804 F.2d 787 (2d Cir. 1986) . . . . . 15

Fujitsu Ltd. v. Fed. Exp. Corp.,
     247 F.3d 423 (2d Cir. 2001) . . . . . . . . . . . . . . . 8

Henneberry v. Sumitomo Corp. of Am.,
     -- F. Supp. 2d. --, 2007 WL 2068346 (S.D.N.Y. 2007). . . 15

Kel Kim Corp. v. Central Markets, Inc.,
     70 N.Y.2d 900, 524 N.Y.S.2d 384 (1987) . . . . . . . 18, 19

MacAlloy Corp. v. Mettalurg, Inc.,
     284 A.D.2d 227, 728 N.Y.S.2d 14 (1st Dep't 2001) . . . . 20

Premier Mountings, Inc. v. Clyde Duneier, Inc.,
     No. 02 Civ. 4897(DLC), 2003 WL 21800082,
     (S.D.N.Y. Aug. 6, 2003) . . . . . . . . . . . . . . . 10-11

S.E.C. v. Kern,
     425 F.3d 143 (2d Cir. 2005) . . . . . . . . . . . . . . . 8

Scotto v. Almenas,
     143 F.3d 105 (2d Cir. 1998) . . . . . . . . . . . . . . . 8

Shechter v. Comptroller of City of N.Y.,
    79 F.3d 265 (2d Cir. 1996) . . . . . . . . . . . . . . 17

The Millgard Corp. v. E.E. Cruz/NAB/Fronier-Kemper,
    No. 99 Civ. 2952 (LBS), 2004 WL 1488534 (S.D.N.Y.
    July 2, 2004), amended on denial of reconsideration,
    2004 WL 1900359 (S.D.N.Y. Aug. 24, 2004) . . . . . . . 18-19

Zupnick v. Jean Mgmt. Assocs., Corp.,
    205 F.3d 1327 (2d Cir. 2000). . . . . . . . . . . . . 22

## Statutes and Other Authorities

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 56(d)(2). . . . . . . . . . . . . . . . . . .22

Fed. R. Civ. P. 56(e)(2) . . . . . . . . . . . . . . . . . .8

N.Y. U.C.C. § 2-104(1) . . . . . . . . . . . . . . . . . . 12

N.Y. U.C.C. § 2-201(1) . . . . . . . . . . . . . . . . . . 10

N.Y. U.C.C. § 2-201(2) . . . . . . . . . . . . . . . . . 1, 10

Daniel J. Kornstein (DK - 3264)
Amy C. Gross (AG - 8836)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MITSUBISHI INTERNATIONAL                 :
CORPORATION,                                        08 CV 00194(JSR)(GWG)
                                         :
          Plaintiff,
                                         :    ECF Case
          -against-
                                         :
INTERSTATE CHEMICAL CORPORATION,
                                         :
          Defendant.
----------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN
### SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This diversity action presents a simple, textbook case of one merchant breaching a contract with another merchant. It calls for straightforward application of section 2-201(2) of the Uniform Commercial Code and elementary principles of contract law. According to N.Y. U.C.C. § 2-201(2):

> Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it [is not subject to a statute of frauds defense] unless written notice of objection to its contents is given within ten days after it is received.

That provision of the UCC governs the undisputed material facts
and requires, as a matter of law, a ruling in plaintiff's favor.

## Why Summary Judgment Is Proper

As clear, indisputable correspondence between the parties
demonstrates, defendant Interstate Chemical Corporation
("Interstate") orally agreed to buy a barge of methanol from
plaintiff Mitsubishi International Corporation ("MIC") on
December 4, 2007.  That same day, Interstate confirmed the
purchase in writing and MIC confirmed the details of the
agreement in writing, and the next day, MIC re-confirmed it in
writing.  Interstate never objected to the terms of the agreement
-- in fact, Interstate said nothing further about the agreement
at all for the next 13 days.

Then, on December 18, 2007, Interstate unilaterally sought
to cancel the contract.  MIC spent the next two days trying to
persuade Interstate to live up to the contract, to no avail.  To
mitigate its damages, MIC, faced with falling prices, on December
21, 2007 sold the barge of methanol it had reserved for
Interstate, at significantly less than the contract price.

The undisputed correspondence between the parties also
demonstrates that Interstate has no valid defense.  The vague
noises Interstate makes in its answer about impossibility and
force majeure do not suffice for those defenses.  And,
regardless, they could have been anticipated by the parties

2

before the contract was made, and the risk of such an event could
have been allocated by the contract.  Further, once MIC was
certain that Interstate was not going to perform, MIC acted with
all due diligence in seeking to minimize its losses caused by
Interstate's breach.

In these circumstances, the Court should grant MIC's motion
for summary judgment.

**STATEMENT OF FACTS**

The facts relevant to this motion are undisputed and drawn
primarily from unambiguous correspondence between the parties.

## The Parties

Federal jurisdiction is based on diversity of citizenship.
MIC, a New York corporation, engages in the business of
international trade of products -- including methanol -- and
services across a range of industry sectors.  Affidavit of Zack
Ferguson-Steger dated March 26, 2008 ("Ferguson-Steger Aff.") at
¶ 3; Ex. 1, ¶ 3.  (Unless otherwise specified, cites to "Ex." are
to the exhibits annexed to the Ferguson-Steger Aff.)  Interstate,
a Pennsylvania-based corporation, both manufactures and
distributes chemical products.  Ex. 2, ¶ 4.

## The Agreement

On December 4, 2007, Zack Ferguson-Steger, marketing manager
of MIC, spoke by telephone with Lori Cirillo, Director of

3

Chemical Procurement at Interstate, regarding the possibility of MIC selling a barge of methanol to Interstate. <u>Ferguson-Steger Aff.</u> at ¶ 4; Ex. 1, ¶ 5; Ex. 2, ¶ 5. In that telephone call, Cirillo and Ferguson-Steger orally agreed that MIC would sell one barge (420,000 gallons, or 10 mb) of methanol to Interstate at a price of $2.55 per gallon. <u>Ferguson-Steger Aff.</u> at ¶ 4; Ex. A to Ex. 1.

Later that same day, Cirillo emailed Ferguson-Steger, confirming, "We would like to purchase your Methanol barge. Please give me a call." <u>Ferguson-Steger Aff.</u> at ¶ 5; Ex. 1, ¶ 6 and Ex. A; Ex. 2, ¶ 6. Less than an hour later, Ferguson-Steger responded to Cirillo via email, stating: "We confirm 10 mb @ $2.55/gal loading Dec. 20 or later. If we can ship earlier, we'll inform you. I'll send over a spot contract a little later." <u>Ferguson-Steger Aff.</u> at ¶ 6; Ex. 1, ¶ 7 and Ex. A; Ex. 2, ¶ 7.

The next day, December 5, 2007, Ferguson-Steger sent an email to Cirillo, attaching a form contract and stating: "Please see the attached contract for the 10mb barge agreed to yesterday." <u>Ferguson-Steger Aff.</u> at ¶ 7; Ex. 1, ¶ 8 and Ex. B; Ex. 2, ¶ 8. MIC then heard nothing from Interstate regarding the methanol barge purchase for the next 13 days. <u>Ferguson-Steger Aff.</u> at ¶ 10.

4

<u>Interstate's Breach</u>

The next time MIC heard from Interstate about the barge purchase was on December 18, 2007, when Interstate sought to cancel the contract.  <u>Ferguson-Steger Aff.</u> at ¶ 10.  On that day, Cirillo sent an email to Ferguson-Steger, stating:

> We are having a problem with this barge.  We are planning to ship this to Owensboro, KY and there is still not coast guard approval yet for receiving barges at this destination. We do not have another home for this barge. Can we cancel this barge because of this coast guard issue?

<u>Id.</u> at ¶ 10; Ex. 1, ¶ 10 and Ex. B; Ex. 2, ¶ 10.

The next day, December 19, 2007, Ferguson-Steger responded to Cirillo, stating:  "We can postpone the delivery of the barge if needed but we cannot cancel."  <u>Ferguson-Steger Aff.</u> at ¶ 11; Ex. 1, ¶ 11 and Ex. B; Ex. 2, ¶ 11.  A few minutes later, Cirillo responded to Ferguson-Steger's email, reiterating Interstate's desire to cancel the agreement and explaining that Interstate's "customer cancel[]ed" and arranged to receive methanol from another supplier.  <u>Ferguson-Steger Aff.</u> at ¶ 12; Ex. 1, ¶ 12 and Ex. B; Ex. 2, ¶ 12.  Ferguson-Steger responded to Cirillo shortly thereafter, explaining:

> Unfortunately, we cannot allow you to walk away from this spot contract, even if the customer claims they cannot receive the barge.  We reserved this product in our inventory and if we were to liquidate now, we

5

> would have to hold you responsible for the
> damages, which we calculate to be around
> $0.35/ gal x 420,000 = $147,000.  This is
> based on the $2.55/gal price that we fixed
> compared with the expected sales price today
> of $2.20/gal.

Ferguson-Steger Aff. at ¶ 13; Ex. 1, ¶ 13 and Ex. B; Ex. 2, ¶ 13.

Later on December 19, and again the next day, Cirillo reiterated

that Interstate would be canceling the contract.  Ferguson-Steger

Aff. at ¶ 14; Ex. 1, ¶ 14 and Exs. B and C; Ex. 2, ¶ 14.

Later on December 20, Ferguson-Steger responded to Cirillo,

reminding her of Interstate's contract with MIC and the "falling

market":

> As you know, the market is falling, and MIC
> will suffer substantial damages if it is
> forced to seek a new buyer for this methanol
> if you repudiate your obligation to purchase.
> The contract price is $2.55/gal, and as of
> the close of business today, we would be able
> to get only approximately $2.18/gallon on the
> spot market for this load.  If we are forced
> to sell the material at a loss we will hold
> Interstate fully responsible for our damages.
>
> In order to mitigate our damages as much as
> possible in this falling market, we will seek
> to sell the material to another buyer by
> tomorrow, December 21, if we do not receive
> your confirmation by 10:00 a.m. that
> Interstate will fulfill its obligations under
> our agreement.  We will then seek prompt
> legal recourse to recover the full amount of
> our losses in connection with that sale from
> Interstate.

Ferguson-Steger Aff. at ¶ 15; Ex. 1, ¶ 15 and Ex. C; Ex. 2, ¶ 15. Interstate did not respond to this email.  Ferguson-Steger Aff., at ¶ 16.

## MIC Mitigates Damages

MIC heard nothing from Interstate on December 21, 2007.  MIC was ready, willing, and able to deliver the methanol barge to Interstate as agreed.  Ferguson-Steger Aff. at ¶ 17.  However, on December 21, 2007, after its numerous attempts to persuade Interstate to perform the agreement failed, and with the methanol spot market still falling, MIC mitigated its damages by selling the methanol it had reserved for Interstate to another company for $2.05 per gallon.  Id. at ¶ 19; Ex. 1, ¶ 17 and Ex. D.  As a result, MIC lost $210,000, the difference between the price of the barge of methanol at the $2.55 purchase price Interstate agreed to and the $2.05 price MIC was forced to accept on December 21.  Ferguson-Steger Aff. at ¶ 20.

**THIS PROCEEDING**

On January 9, 2008, MIC commenced this action to recover the losses it sustained due to Interstate's breach of its agreement to buy the methanol barge.  The complaint asserts two claims, one for breach of contract and one for promissory estoppel.  Ex. 1. Interstate answered the complaint on February 28, 2008.  Ex. 2. MIC now moves for summary judgment.

7

## SUMMARY JUDGMENT STANDARD

The criteria for summary judgment are familiar.  Fed. R. Civ. P. 56(c) permits summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); S.E.C. v. Kern, 425 F.3d 143, 147 (2d Cir. 2005).

A properly supported motion for summary judgment cannot be defeated by "mere[] allegations or denials" of a pleading; rather, it must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The non-movant cannot rely on "conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  Instead, it "must produce specific facts indicating that a genuine factual issue exists," and "there must be evidence on which the jury could reasonably find for the non-movant."  Id. (quotations omitted).  See also Fujitsu Ltd. v. Fed. Exp. Corp., 247 F.3d 423, 428 (2d Cir. 2001).

Plaintiff's motion meets these criteria.

8

**ARGUMENT**

I

### SINCE INTERSTATE FAILED TO TAKE DELIVERY AND PAY FOR THE METHANOL AS AGREED, IT BREACHED ITS AGREEMENT WITH MIC

None of the material facts about the agreement or its breach are genuinely in dispute.  In this action, Interstate cannot and does not dispute the authenticity of any of the writings it exchanged with MIC with respect to Interstate's agreement to buy the methanol barge.  The undisputed record thus demonstrates that MIC and Interstate made an agreement for the sale of 420,000 gallons of methanol at a price of $2.55 per gallon to be delivered on or after December 20, 2007, and confirmed the material terms of that agreement in writing.

Interstate has not offered, and cannot offer, a logical explanation for the contents of these writings beyond that which is clear from their face –- MIC and Interstate had an agreement. The weak and unsupported denials in Interstate's answer do not change this fact, and thus Interstate is liable to MIC for MIC's losses based on Interstate's breach of contract.

The oral agreement, confirmed in writing, between MIC and Interstate for the sale of bulk methanol was a binding contract under the UCC:

> [A] contract for the sale of goods for the
> price of $500 or more is not enforceable by

9

> way of action or defense unless there is some
> writing sufficient to indicate that a
> contract for sale has been made between the
> parties and signed by the party against whom
> enforcement is sought. . . . A writing is not
> insufficient because it omits or incorrectly
> states a term agreed upon but the contract is
> not enforceable under this paragraph beyond
> the quantity of goods shown in such writing.

N.Y. U.C.C. § 2-201(1).  An oral agreement confirmed in writing,

such as the one between MIC and Interstate, qualifies as a

"writing sufficient to indicate that a contract for sale has been

made":

> Between merchants if within a reasonable time
> a writing in confirmation of the contract and
> sufficient against the sender is received and
> the party receiving it has reason to know its
> contents, it satisfies the requirements of
> subsection (1) against such party unless
> written notice of objection to its contents
> is given within ten days after it is
> received.

N.Y. U.C.C. § 2-201(2).  See also Bazak Int'l Corp. v. Mast

Indust., Inc., 73 N.Y.2d 113, 120, 538 N.Y.S.2d 503, 506 (1989);

Premier Mountings, Inc. v. Clyde Duneier, Inc., No. 02 Civ.

4897(DLC), 2003 WL 21800082, at *3 (S.D.N.Y. Aug. 6, 2003).

Email is a valid form of "writing" for purposes of UCC § 2-

201(2).  See Bazak Int'l Corp. v. Tarrant Apparel Group, 378 F.

Supp. 2d 377, 383-84 (S.D.N.Y. 2005).

Summary judgment for the plaintiff is appropriate where, as

here:

10

> There is no dispute that the plaintiff and
> defendant are merchants, that the [writings]
> were sent within a reasonable time after the
> alleged agreement, that they were received by
> someone with reason to know of their
> contents, that no written objection was made
> to the [writings] within ten days, and that
> the [writings] are sufficient to indicate the
> existence of an agreement.

Premier Mountings, Inc., supra, 2003 WL 21800082, at *4.  In

Premier Mountings, Inc., defendant, a jewelry reseller, ordered

jewelry from plaintiff, a jewelry manufacturer.  Along with

various goods, plaintiff sent invoices to defendant that listed a

description of the goods, price, quantity, and total amount due.

Defendant made no written objection to the terms of those

invoices within ten days of receiving them.  Accordingly, the

Court granted summary judgment to plaintiff "on the issue that

the invoices reflect a contract between the parties."  Id.

    Here, an enforceable contract between merchants under UCC §

2-201 exists just as plainly as in Premier Mountings, Inc., for

numerous reasons:

    1.  Both parties are merchants.  Interstate admits that it

distributes chemical products.  See Ex. 2, ¶ 4.  It cannot

dispute that MIC regularly buys and sells chemical products.

Thus, both parties are "merchants" under the UCC -- that is, they

"deal[] in goods of the kind or otherwise . . . hold[]

[themselves] out as having knowledge or skill peculiar to the

11

practices or goods involved in the transaction."   N.Y. U.C.C. §
2-104(1).

    2.   <u>The writings the parties exchanged suffice to indicate
the existence of an agreement.</u>   The contract falls squarely
within the provisions of UCC § 2-201(2).   Interstate does not
dispute that its representative spoke with MIC's representative
on December 4, 2007 regarding purchase of a barge of methanol.
Nor does Interstate dispute that its representative sent MIC an
email stating its desire to purchase the barge, or that MIC sent
two emails over the next two days confirming the key terms of the
agreement.   See also <u>Bazak</u>, 73 N.Y.2d at 119, 538 N.Y.S.2d at 505
(stating that the "only indispensable term" in a UCC 2-201
contract is quantity); <u>B & R Textile Corp. v. Domino Textiles
Inc.,</u> 77 A.D.2d 539, 539-40, 430 N.Y.S.2d 89, 90 (1st Dep't 1980)
(explaining that confirmatory writing listed parties to the sale,
date, payment terms, price, quantity, and description of goods).

    Interstate acknowledged the promise when it asked if it
could "cancel [the] barge" on December 18, 2007.   Only when MIC
responded that it would enforce the contract did Interstate
become coy and disingenuous about whether a valid contract
existed.

    3.   <u>The writings were sent within a reasonable period of
time.</u>   MIC sent its first confirmatory writing the same day it

12

made its agreement with Interstate.   It sent an additional
confirmatory writing the next day.

        4.   Cirillo of Interstate received the writings and knew of
their contents.   Interstate has not disputed the existence or its
receipt of any of the writings establishing MIC's claims that MIC
sent to Cirillo.   In fact, she herself knew of the agreement, as
shown by her request to "cancel" it on December 18, 2007.

        5.   Interstate made no written objection to the writings
within ten days.   Between the time MIC confirmed and reconfirmed
the terms of the agreement on December 4 and 5, 2007, and the
time Interstate sought to cancel the agreement thirteen or
fourteen days later, MIC heard nothing from Interstate about the
methanol purchase.   Even after these 13 or 14 days passed,
Interstate did not object to any of the terms of the writings --
it simply sought to cancel them.

        In sum, after agreeing to buy the barge of methanol from MIC
and inducing MIC to hold that barge in its inventory to ensure
that it could perform the agreement, Interstate unilaterally
decided not to perform.   As the New York Court of Appeals has
explained, this is exactly the type of misbehavior UCC 2-201(2)
was meant to address:

                Section 2-201(2) recognized the common
                practice among merchants, particularly small
                businesses, to enter into oral sales
                agreements later confirmed in writing by one
                of the parties.   Absent such a provision,

                                    13

> only the party receiving the confirmatory
> writing could invoke the Statute of Frauds,
> giving that party the option of enforcing the
> contract or not, depending on how
> advantageous the transaction proved to be.
> UCC 2-201(2) was intended to address that
> inequity . . .
>
> [A] rule requiring explicit confirmatory
> language or an express reference to the prior
> agreement . . . would reintroduce the very
> unfairness addressed by the reform, for the
> sending merchant still would be bound by the
> writing while the recipient could ignore it
> or enforce it at will.

Bazak, 73 N.Y.2d at 121-22, 538 N.Y.S.2d at 507 (citations
omitted).

Interstate has not disputed and cannot dispute the
authenticity of MIC's confirmatory writings, and it cannot point
to any timely objections to those writings sufficient to raise a
material issue of disputed fact.  Had MIC refused to sell a barge
of methanol to Interstate on December 20, 2007, Interstate could
have sued MIC for breach of contract based on MIC's confirmatory
emails -- and won!  The agreement is therefore valid, and MIC is
accordingly entitled to summary judgment on its breach of
contract claim.

14

II

## SINCE MIC RELIED ON INTERSTATE'S PROMISE TO BUY METHANOL, AND INTERSTATE BROKE THAT PROMISE, MIC IS ENTITLED TO SUMMARY JUDGMENT ON THAT THEORY, AS WELL

Apart from the contract between MIC and Interstate, and in the alternative, Interstate's promise to purchase methanol from MIC is binding under the doctrine of promissory estoppel. Under New York law, a promissory estoppel claim requires (a) a clear, unambiguous promise; (b) reasonable and foreseeable reliance on the promise; and (c) reliance by the party to whom the promise was made, to that party's detriment. See Esquire Radio & Electronics, Inc. v. Montgomery Ward & Co., Inc., 804 F.2d 787, 793 (2d Cir. 1986); Henneberry v. Sumitomo Corp. of Am., -- F. Supp. 2d. --, 2007 WL 2068346, at *8 (S.D.N.Y. 2007).

The undisputed writings between the parties make plain that Interstate promised to buy a barge of methanol from MIC and led MIC to believe that it would in fact make such a purchase under the terms reflected in those writings. Interstate said it "would like to purchase [MIC's] barge," then stood by in silence after receiving two writings from MIC confirming the agreement and indicating that MIC would reserve a barge of methanol to satisfy it. Interstate can offer no reason why MIC should not have relied upon Interstate's promise, and cannot dispute that MIC was damaged by its reliance when the price for methanol ultimately

15

dropped to $.50 below the contract price before MIC could
mitigate.

     MIC is therefore entitled to summary judgment on its
promissory estoppel claim as well as on its breach of contract
claim.

                              III

          SINCE INTERSTATE HAS NOT PROPERLY PLEADED ITS
          AFFIRMATIVE DEFENSES, AND SINCE ITS ALLEGED
             "COAST GUARD ISSUE" WAS NEITHER EXTREME
            NOR UNANTICIPATED, INTERSTATE HAS RAISED
            NO VALID EXCUSE FOR ITS FAILURE TO PERFORM

     None of Interstate's affirmative defenses has any merit.  In
opposition to this motion, Interstate will probably talk about
impossibility and force majeure.  But such reliance would be
misplaced.

     In the first place, Interstate has not properly pleaded its
affirmative defenses.  Instead, it offers only bare conclusory
statements without facts.  Secondly, apart from any facial
defect, Interstate cannot point to any circumstances that
constitute impossibility or force majeure that might excuse its
nonperformance.

A. No Facts Pleaded

     Interstate has not properly pleaded either impossibility or
force majeure (or, for that matter, any other affirmative
defense).  Affirmative defenses consisting solely of "bald

                              16

assertion[s] . . . which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy." <u>Shechter v. Comptroller of City of N.Y.</u>, 79 F.3d 265, 270 (2d Cir. 1996) (quotations omitted). <u>See also Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.</u>, 531 F. Supp. 2d 620, 623 (S.D.N.Y. 2008) (granting motion to strike affirmative defenses as insufficiently pleaded where defendant alleged no facts, not "even general facts to support them").

Interstate raises both impossibility and <u>force majeure</u> with the most conclusory statements possible, devoid of any factual allegations, stating only: "Defendant's performance under the alleged contract was excused due to a <u>force majeure</u>[/impossibility]." Ex. 2, Eighth and Ninth Affirmative Defenses.

B. <u>No Substance</u>

Not only does Interstate fail to meet even notice pleading standards for its affirmative defenses, but any impossibility or <u>force majeure</u> defenses based on the few relevant statements in Interstate's correspondence also cannot bear scrutiny. As best we can tell, based on the correspondence, Interstate claimed that <u>its</u> client decided not to accept delivery of the methanol at the delivery site in Owensboro, Kentucky, because the site did not yet have coast guard approval to receive barges. In the words of Interstate's Cirillo:

17

> We are having a problem with this barge.  We
> are planning to ship this to Owensboro, KY
> and there is still not coast guard approval
> yet for receiving barges at this destination.
> We do not have another home for this barge.
> Can we cancel this barge because of this
> coast guard issue?

See Ex. 1, Ex. B.  Cirillo went on to explain that Interstate's

"customer cancel[]ed" and arranged to receive methanol from

another supplier.  Id.  True or not, such facts raise no valid

defense.

### 1. No Impossibility

Interstate's claim of impossibility is insupportable.

Impossibility defenses:

> have been applied narrowly, due in part to
> judicial recognition that the purpose of
> contract law is to allocate the risks that
> might affect performance and that performance
> should be excused only in extreme
> circumstances.  Impossibility excuses a
> party's performance only when the destruction
> of the subject matter of the contract or the
> means of performance makes performance
> objectively impossible.  Moreover, the
> impossibility must be produced by an
> unanticipated event that could not have been
> foreseen or guarded against in the contract.

Kel Kim Corp. v. Central Markets, Inc., 70 N.Y.2d 900, 902, 524

N.Y.S.2d 384, 385 (1987) (citations omitted).  Similarly, in The

Millgard Corp. v. E.E. Cruz/NAB/Fronier-Kemper, No. 99 Civ. 2952

(LBS), 2004 WL 1488534, at *11 (S.D.N.Y. July 2, 2004), amended

on denial of reconsideration, 2004 WL 1900359 (S.D.N.Y. Aug. 24, 2004), this Court found that impossibility is often barred as a defense, even where performance is actually impossible, where the risk was foreseeable at the time the contract was made and could have been accounted for in the contract.

Interstate's apparent reason for its inability to perform its agreement with MIC is a vaguely and insufficiently explained difficulty with an Interstate customer rejecting one delivery point due to coast guard regulations. This, on its own, does not raise the "extreme" or "unanticipated" circumstances necessary to sustain a defense of impossibility.

In Kel Kim Corp., supra, the Court held that a party's inability to obtain and maintain an insurance policy necessary for the operation of a roller rink was "not within the embrace of the doctrine of impossibility." Kel Kim Corp., 70 N.Y.2d at 902, 524 N.Y.S.2d at 385. Similarly, here, Interstate's customer's refusal or inability to secure a delivery point that complied with coast guard regulations -- regulations that Interstate has never asserted were new or unknown -- was in no way the extreme, unforeseen circumstance contemplated by the impossibility doctrine. In any event, the unavailability of a single delivery point hardly presents an insurmountable obstacle to performance, even under the "dictionary" definition of impossibility.

19

2. <u>No</u> Force Majeure

A <u>force majeure</u> defense is similarly narrow.  <u>Id.</u>, 70 N.Y.2d
at 902-03, 524 N.Y.S.2d at 385-86.  "Ordinarily, only if the
<u>force majeure</u> clause specifically includes the event that
actually prevents a party's performance will that party be
excused."  <u>Id.</u>, 70 N.Y.2d at 402-03, 524 N.Y.S.2d at 385.  For
example, in <u>MacAlloy Corp. v. Mettalurg, Inc.</u>, 284 A.D.2d 227,
728 N.Y.S.2d 14 (1st Dep't 2001), plaintiff shut down its plant
due to financial issues related to environmental regulations.  In
finding that the shutdown did not relieve plaintiff of its
obligation to perform, despite "plant shutdown" language in the
contract's <u>force majeure</u> provision, the court explained that
"plaintiff was fully aware of the environmental regulations, and
the Environmental Protection Agency's intention to enforce them
fully, prior to entering into the contract with defendant."  <u>Id.</u>,
284 A.D.2d at 227-28, 728 N.Y.S.2d at 14-15.

Similarly, here, even if a contractual <u>force majeure</u>
provision existed to address the "coast guard issue" (and no such
provision exists) that Interstate claims excuses its performance,
Interstate has never asserted that this issue implicated a new
regulation, or one of which Interstate was unaware.  Accordingly,
unless Interstate can credibly demonstrate that the "coast guard
issue" was not something it could have anticipated before it made

the contract with MIC, its <u>force majeure</u> defense, like its impossibility defense, lacks validity on its face.

IV

### SINCE MIC PROMPTLY SOLD TO AVOID FURTHER FALLING PRICES, IT TOOK ALL REASONABLE STEPS TO MITIGATE DAMAGES

Interstate's assertion (in its affirmative defenses and likely in its opposition to this motion) that MIC did not sufficiently mitigate its damages is likewise meritless.  MIC had no idea, before Cirillo's December 18, 2007 email, that Interstate did not intend to perform under the contract.  On receiving this email, MIC then spent two days attempting to convince Interstate to perform.  None of the writings reflecting these efforts is disputed by Interstate.

On December 21, 2007, a mere three days after first receiving notification that Interstate did not intend to perform, and in the face of falling prices on the spot market, MIC sold the methanol it had reserved for Interstate, for $.50 less per gallon than the contract price.

MIC sought the best price it could get on the spot market. Any suggestion that MIC, in waiting three days in a climate of falling prices to sell its methanol, waited too long adds insult to injury, as most of those three days were taken up with MIC trying to salvage the contract that Interstate chose to breach.

21

In any event, the undisputed proof of breach means, at a minimum, that summary judgment should be granted on liability, followed by an inquest to determine the precise amount of damages. "An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages." Fed. R. Civ. P. 56(d)(2). See also Zupnick v. Jean Mgmt. Assocs., Corp., 205 F.3d 1327, 2000 WL 232014 (2d Cir. 2000).

<h3 style="text-align:center">CONCLUSION</h3>

Interstate has not disputed the core documents underlying MIC's claims. These documents establish as a matter of law that MIC and Interstate had a merchants' contract for sale of a barge of methanol, and that Interstate -- which has never denied refusing to perform -- breached it. These same documents also establish Interstate's liability under a theory of promissory estoppel.

Interstate has failed to fulfill even the most basic pleading requirements in attempting to assert its affirmative defenses. But even if Interstate had properly pleaded these defenses, Interstate's client's problem with a delivery site is not legally sufficient to invoke either impossibility or force majeure as an excuse for nonperformance. Nor can Interstate credibly argue that MIC was anything but reasonable and diligent in mitigating its damages.

For the reasons given, plaintiff's motion for summary judgment should be granted.

Dated:    New York, New York
          March 26, 2008

                    Respectfully submitted,

                    KORNSTEIN VEISZ WEXLER & POLLARD, LLP

                    _____
                    By:  Daniel J. Kornstein (DK - 3264)
                         Amy C. Gross (AG - 8836)

                    757 Third Avenue
                    New York, New York 10017
                    (212) 418-8600

                    Attorneys for Plaintiff

23