Daniel J. Kornstein (DK - 3264)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

MITSUBISHI INTERNATIONAL
CORPORATION,                                :

                                            :        08 CV 00194(JSR)(GWG)

            Plaintiff,                      :        **PLAINTIFF'S LOCAL CIVIL**
                                            :        **RULE 56.1(a) STATEMENT**

            -against-                       :
                                            :        ECF Case

INTERSTATE CHEMICAL CORPORATION,

                                            :

            Defendant.
----------------------------------X

        Plaintiff Mitsubishi International Corporation ("MIC"), by

and through its undersigned counsel, submits, pursuant to Local

Civil Rule 56.1(a), the following statement of material facts as

to which there is no genuine issue to be tried:

        1.  MIC engages in the business of international trade of

products -- including methanol -- and services across a range of

industry sectors.  Ferguson-Steger Aff. at ¶ 3.[1]

        2.  Defendant Interstate Chemical Corporation

("Interstate") both manufactures and distributes chemical

products.  Ex. 2, ¶ 4.

        3.  MIC is a New York corporation with its principal place

--------------------

        [1] "Ferguson-Steger Aff." refers to the Affidavit of Zack
Ferguson-Steger, sworn to on March 26, 2008 and submitted
herewith.  Unless otherwise specified, cites to "Ex." are to the
exhibits annexed to the Ferguson-Steger Aff.

of business at 655 Third Avenue, New York, New York 10017.  Ex.
1, ¶ 3.

    4.  Interstate is a Pennsylvania-based corporation.  Ex. 2,
¶ 4.

    5.  On December 4, 2007, Zack Ferguson-Steger, marketing
manager of MIC, spoke by telephone with Lori Cirillo, Director of
Chemical Procurement at Interstate, regarding the possibility of
MIC selling a barge of methanol to Interstate.  Ferguson-Steger
Aff. at ¶ 4; Ex. 1, ¶ 5; Ex. 2, ¶ 5.

    6.  During that December 4, 2007 telephone conversation,
MIC and Interstate reached an oral agreement that MIC would sell
one barge (420,000 gallons, or 10 mb) of methanol to Interstate
at a price of $2.55 per gallon, to be loaded on or after December
20, 2007.  Ferguson-Steger Aff. at ¶ 4; Ex. A to Ex. 1.

    7.  Later that day, Ms. Cirillo emailed Mr. Ferguson-
Steger, confirming that Interstate "would like to purchase your
Methanol barge.  Please give me a call."  Ferguson-Steger Aff. at
¶ 5; Ex. 1, ¶ 6 and Ex. A; Ex. 2, ¶ 6.

    8.  Less than an hour later, Mr. Ferguson-Steger responded
to Ms. Cirillo via email, stating:  "We confirm 10 mb @ $2.55/gal
loading Dec. 20 or later.  If we can ship earlier, we'll inform
you.  I'll send over a spot contract a little later."  Ferguson-
Steger Aff. at ¶ 6; Ex. 1, ¶ 7 and Ex. A; Ex. 2, ¶ 7.

    9.  The next day, December 5, 2007, Mr. Ferguson-Steger

2

reconfirmed the agreement and its material terms in an email to Ms. Cirillo. He attached a form contract to that email and stated: "Please see the attached contract for the 10mb barge agreed to yesterday." Ferguson-Steger Aff. at ¶ 7; Ex. 1, ¶ 8 and Ex. B; Ex. 2, ¶ 8.

10. The form contract attached to this email contains the same material terms MIC and Interstate agreed to the day before. Ex. B to Ex. 1.

11. From December 5, 2007, up until December 18, 2007, Interstate did not communicate with MIC regarding the methanol barge purchase. Ferguson-Steger Aff. at ¶ 10.

12. On December 18, 2007, Interstate sought to cancel the contract via an email from Ms. Cirillo to Mr. Ferguson-Steger stating: "We are having a problem with this barge. We are planning to ship this to Owensboro, KY and there is still not coast guard approval yet for receiving barges at this destination. We do not have another home for this barge. Can we cancel this barge because of this coast guard issue?" Ferguson-Steger Aff. at ¶ 10; Ex. 1, ¶ 10 and Ex. B; Ex. 2, ¶ 10.

13. The next day, December 19, 2007, Mr. Ferguson-Steger responded to Ms. Cirillo, stating: "We can postpone the delivery of the barge if needed but we cannot cancel." Ferguson-Steger Aff. at ¶ 11; Ex. 1, ¶ 11 and Ex. B; Ex. 2, ¶ 11.

14. A few minutes later, Ms. Cirillo responded to Mr. Ferguson-Steger, repeating Interstate's desire to cancel the agreement and explaining that Interstate's "customer cancel[]ed" and arranged to receive methanol from another supplier. Ferguson-Steger Aff. at ¶ 12; Ex. 1, ¶ 12 and Ex. B; Ex. 2, ¶ 12.

15. Mr. Ferguson-Steger responded to Ms. Cirillo shortly thereafter, explaining:

> Unfortunately, we cannot allow you to walk away from this spot contract, even if the customer claims they cannot receive the barge. We reserved this product in our inventory and if we were to liquidate now, we would have to hold you responsible for the damages, which we calculate to be around $0.35/ gal x 420,000 - $147,000. This is based on the $2.55/gal price that we fixed compared with the expected sales price today of $2.20/gal.

Ferguson-Steger Aff. at ¶ 13; Ex. 1, ¶ 13 and Ex. B; Ex. 2, ¶ 13.

16. Later on December 19, and again on the following day, Ms. Cirillo reiterated that Interstate would be canceling the contract. Ferguson-Steger Aff. at ¶ 14; Ex. 1, ¶ 14 and Exs. B and C; Ex. 2, ¶ 14.

17. Later on December 20, Mr. Ferguson-Steger responded to Ms. Cirillo, reminding her of Interstate's contract with MIC and stating:

> As you know, the market is falling, and MIC will suffer substantial damages if it is forced to seek a new buyer for this methanol

4

> if you repudiate your obligation to purchase.
> The contract price is $2.55/gal, and as of
> the close of business today, we would be able
> to get only approximately $2.18/gallon on the
> spot market for this load.  If we are forced
> to sell the material at a loss we will hold
> Interstate fully responsible for our damages.
>
> In order to mitigate our damages as much as
> possible in this falling market, we will seek
> to sell the material to another buyer by
> tomorrow, December 21, if we do not receive
> your confirmation by 10:00 a.m. that
> Interstate will fulfill its obligations under
> our agreement.  We will then seek prompt
> legal recourse to recover the full amount of
> our losses in connection with that sale from
> Interstate.

Ferguson-Steger Aff. at ¶ 15; Ex. 1, ¶ 15 and Ex. C; Ex. 2, ¶ 15.

18. Interstate did not respond to Mr. Ferguson-Steger's December 20, 2007 email.  Ferguson-Steger Aff. at ¶ 16.

19. MIC was able and willing to deliver the methanol to Interstate at the agreed-upon price of $2.55 per gallon. Ferguson-Steger Aff. at ¶ 17.

20. On December 21, 2007, MIC sold the methanol it had reserved for sale to Interstate to another company, Tauber Petrochemical Company, for $2.05 per gallon.  Ferguson-Steger Aff. at ¶ 19; Ex. 1, ¶ 17 and Ex. D.

21. As a result of Interstate's refusal to perform the agreement with MIC, MIC lost $210,000, the difference between the price of the barge of methanol at the $2.55 purchase price

Interstate agreed to and the $2.05 price MIC was forced to accept on December 21.

Dated:    New York, New York
          March 26, 2008


                        KORNSTEIN VEISZ WEXLER & POLLARD, LLP

                        _____
                        By:   Daniel J. Kornstein (DK - 3264)

                        757 Third Avenue
                        New York, New York 10017
                        (212) 418-8600

                        Attorneys for Plaintiff


6