Daniel J. Kornstein (DK-3264)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MITSUBISHI INTERNATIONAL          :
CORPORATION,
                                  :
            Plaintiff,                    08 CV 00194 (JSR) (GWG)
                                  :
       -against-
                                  :
INTERSTATE CHEMICAL CORPORATION,
                                  :
            Defendant.
------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF SUMMARY JUDGMENT**

Kornstein Veisz Wexler & Pollard, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600
Attorneys for Plaintiff
Mitsubishi International Corporation

## **TABLE OF CONTENTS**

Page(s)

1. SUMMARY JUDGMENT NOT PREMATURE . . . . . . . . . . . . . 2
2. INTERSTATE'S OBJECTION UNTIMELY . . . . . . . . . . . . 4
3. INCONSISTENT PROVISIONS . . . . . . . . . . . . . . . . 4
4. NO FORCE MAJEURE . . . . . . . . . . . . . . . . . . . 6
5. MIC RESERVED METHANOL FOR SALE TO INTERSTATE . . . . . 7
6. COMMERCIALLY REASONABLE MITIGATION . . . . . . . . . . 8
CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

Page(s)

Berger v. United States,
    87 F.3d 60 (2d Cir. 1996) . . . . . . . . . . . . . . . . 2

Bazak Int'l Corp. v. Mast Indus., Inc.,
    73 N.Y.2d 113, 119, 538 N.Y.S.2d 503, 505 (1989) . . . . . . 4

Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.,
    769 F.2d 919, 926 (2d Cir. 1985) . . . . . . . . . . . . . 3

Caslterigg Master Investments Ltd. v. Charys Holding Co., Inc.,
    No. 07 Civ. 9742(GEL), 2008 WL 449690, at *2
    (S.D.N.Y. Feb. 19, 2008) . . . . . . . . . . . . . . . . 2, 3

General Elec. Co. v. Metals Res. Group Ltd.,
    293 A.D.2d 417, 418, 741 N.Y.S.2d 218, 220
    (1st Dep't 2002) . . . . . . . . . . . . . . . . . . . . . 6

Hellstrom v. U.S. Dep't of Veterans Affairs,
    201 F.3d 94 (2d Cir. 2000) . . . . . . . . . . . . . . . . 2

Kel Kim Corp. v. Cent. Mkts., Inc.,
    70 N.Y.2d 900, 902-03, 524 N.Y.S.2d 384, 385 (1987) . . . 6

MacAlloy Corp. v. Mettalurg, Inc.,
    284 A.D.2d 227, 228, 728 N.Y.S.2d 14, 15
    (1st Dep't 2001) . . . . . . . . . . . . . . . . . . . . . 6

Miller Marine Servs., Inc. v. Travelers Property
    Casualty Ins. Co.,
    197 F. App'x 62, 65 (2d Cir. 2006) . . . . . . . . . . . . 3

Sutera v. Schering Corp.,
    73 F.3d 13 (2d Cir. 1995) . . . . . . . . . . . . . . . . 2

Other Authorities

N.Y. U.C.C. § 2-201(1) . . . . . . . . . . . . . . . . . . . 4

N.Y. U.C.C. § 2-201(2) . . . . . . . . . . . . . . . . . . . 4

N.Y. U.C.C. § 2-207(3) . . . . . . . . . . . . . . . . . . 4-5

Daniel J. Kornstein (DK - 3264)
Amy C. Gross (AG - 8836)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
MITSUBISHI INTERNATIONAL            :
CORPORATION,                           08 CV 00194(JSR)(GWG)
                                    :
        Plaintiff,
                                    :  ECF Case
        -against-
                                    :
INTERSTATE CHEMICAL CORPORATION,
                                    :
        Defendant.
-------------------------------------X

## PLAINTIFF'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF SUMMARY JUDGMENT

Defendant's opposing papers present no genuinely disputed questions of material fact. The only material issues are the key terms of the agreement between plaintiff Mitsubishi International Corporation ("MIC") and defendant Interstate Chemical Corporation ("Interstate"), and whether Interstate breached that agreement. Those issues are not disputed. Interstate never denies that it agreed on key terms to buy a barge of methanol from MIC, or that it refused to perform the agreement.

To the extent Interstate tries to raise any disputed issues of fact, they are immaterial. They have no bearing on the merchants' agreement reached by the parties. That is why summary

judgment is appropriate.

1. **SUMMARY JUDGMENT NOT PREMATURE**

MIC's summary judgment motion is not too early. A plaintiff can move for summary judgment "at any time after . . . 20 days have passed from commencement of the action." Fed. R. Civ. P. 56(a). This action was filed on January 9, 2008, and this motion was filed more than 60 days later, on March 26, 2008. Interstate has, moreover, answered the complaint, and the Court gave MIC permission to file this motion at the March 12, 2008 preliminary conference.

Early summary judgment is proper here because this case is a simple dispute between two parties to a contract, the essential terms of which are undisputed by the parties and evident in the writings they exchanged. See Caslterigg Master Investments Ltd. v. Charys Holding Co., Inc., No. 07 Civ. 9742(GEL), 2008 WL 449690, at *2 (S.D.N.Y. Feb. 19, 2008) (granting pre-discovery summary judgment on breached securities agreement). This case does not present a claim about which Interstate has no information or must inquire into a party's knowledge or motives, unlike the cases cited by Interstate. Compare Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94 (2d Cir. 2000); Berger v. United States, 87 F.3d 60 (2d Cir. 1996); Sutera v. Schering Corp., 73 F.3d 13 (2d Cir. 1995).

As a result, Interstate's bald insistence that it needs

more discovery to respond to this motion and that it has properly requested such discovery, is unfounded. Interstate has submitted no affidavit showing "that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f). Such "failure to file such an affidavit under Rule 56(f) is by itself enough to reject a claim that the opportunity for discovery was inadequate." Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919, 926 (2d Cir. 1985). See also, e.g., Miller Marine Servs., Inc. v. Travelers Property Casualty Ins. Co., 197 F. App'x 62, 65 (2d Cir. 2006); Caslterigg Master Investments Ltd., supra, at *2.

  Interstate's insinuations that MIC has refused or failed to meet its discovery obligations are meritless. The Court has stayed depositions until after oral argument of this motion. Interstate served its document demands on MIC on March 19, 2008, the same day MIC served its required initial disclosures on Interstate. MIC's response to Interstate's document demands were served today, and a copy is annexed to the accompanying Reply Affidavit of Daniel J. Kornstein dated April 18, 2008. Interstate, by contrast, has failed to make (or even attempt) the required Rule 56(f) showing to justify additional discovery to respond to this motion. Interstate looks through the wrong end of the telescope when it tries to blame MIC, which has complied with all of its discovery obligations, for its own deficiencies.

2. <u>**INTERSTATE'S OBJECTION UNTIMELY**</u>

Although Interstate claims its purported December 18, 2007 cancellation occurred ten business days after MIC's December 4, 2007 confirmatory writing, the ten-day objection period under U.C.C. § 2-201(2) is stated in "days," not "business days." <u>Def. Mem.</u> at 10. Absent any qualifying language, "days" must be given its plain meaning of calendar days.

3. <u>**INCONSISTENT PROVISIONS**</u>

Interstate nowhere raises a disputed issue of material fact challenging the parties' agreement on the key terms of quantity and sales price of methanol. Quantity is the only indispensable term in a UCC § 2-201 contract such as the one between Interstate and MIC. <u>See</u> <u>Bazak Int'l Corp. v. Mast Indus., Inc.</u>, 73 N.Y.2d 113, 119, 538 N.Y.S.2d 503, 505 (1989); <u>see also</u> N.Y. U.C.C. 2-201(1) ("A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing."). Interstate has, therefore, conceded that the parties agreed on all necessary terms.

Interstate's references to additional terms listed in the form contract MIC sent to Interstate are red herrings. As the U.C.C. states, where the parties have an otherwise confirmed written contract, "the terms of the particular contract consist of those terms on which the writings of the parties agree." N.Y.

4

U.C.C. § 2-207(3). The writings of the parties here agree on the price and quantity terms. The additional terms raised by Interstate are immaterial and irrelevant.

MIC has made no attempt to enforce any force majeure or arbitration clause. Delivery date is a similar non-issue. Interstate tries to create confusion over an alleged "firm delivery date" of December 20, 2007 in the form contract (which Interstate claims it never accepted), the "'December 20 or later'" delivery date it admits the parties agreed to on December 4, and "sometime 'in December 2007.'" See Cirillo Aff. at ¶¶ 9-10. MIC accepts Interstate's rejection of a December 20, 2007 firm delivery date, as it is against MIC's practice to set one firm delivery date for shipments such as a barge of methanol. Reply Aff. of Zack Ferguson-Steger dated Apr. 18, 2008 at ¶ 6. But Interstate never alleges that it objected to this slightly later delivery date or tried to cancel the agreement based upon this alleged revision of terms.

Nor could it. The "December 20 or later" delivery date reflects the uncertainty inherent in the delivery of MIC's sales of methanol due to a variety of external factors affecting movement of the product. Id. Rather than commit to one particular delivery date, MIC always builds a few days of leeway into its delivery dates to make sure it can meet its sales obligations. Id. at ¶ 3. Regardless of whether MIC told

Interstate it could not deliver the methanol until December 24, MIC was well within the delivery date the parties agreed on, "December 20 or later," as well as industry practices and MIC's own practices.

Any possible minor inconsistencies in the parties' accounts of discussions of the delivery date therefore do not show any difference on any material point. In any event, Interstate has not raised a genuine dispute over the parties' agreement on the material terms of price and quantity.

4.  NO FORCE MAJEURE

Industry practice is immaterial to the parties' agreement. Interstate's alleged force majeure -- its client's alleged inability to accept delivery of the methanol Interstate agreed to buy from MIC due to Coast Guard regulations -- is not a force majeure, as a matter of law.

"[O]nly if the force majeure clause specifically includes the event that actually prevents a party's performance will that party be excused." Kel Kim Corp. v. Cent. Mkts., Inc., 70 N.Y.2d 900, 902-03, 524 N.Y.S.2d 384, 385 (1987). See also General Elec. Co. v. Metals Res. Group Ltd., 293 A.D.2d 417, 418, 741 N.Y.S.2d 218, 220 (1st Dep't 2002); MacAlloy Corp. v. Mettalurg, Inc., 284 A.D.2d 227, 228, 728 N.Y.S.2d 14, 15 (1st Dep't 2001).

Interstate never alleges that it sought to make its agreement with MIC contingent on Interstate's customer's ability

to take delivery of the methanol. Interstate also never alleges that it attempted to include a force majeure clause in its agreement with MIC, let alone one that would cover the possibility that Interstate's client might not be able to take delivery. Nor could it, as Interstate did not mention its customer's alleged difficulty with Coast Guard approvals until December 18, 2007, fourteen days after MIC and Interstate confirmed their sales agreement. Ferguson-Steger Reply Aff. at ¶ 14; Cirillo Aff. at ¶¶ 16-17; Puntureri Aff. at ¶¶ 13-14.

Interstate's affidavits of alleged industry custom are therefore irrelevant. No number of affidavits can overcome Interstate's failure to seek a force majeure clause until after the agreement was made and the alleged (yet legally insufficient) force majeure happened. The horses had already left the barn. The remainder of Interstate's "industry custom" argument, that supply contracts can be canceled regularly and without penalty, sometimes for "no reason at all" (Puntureri Aff. at ¶ 4; Swinderman Aff. at ¶ 7), undermines the reliability that the U.C.C. and basic contract law are meant to uphold.

5.  **MIC RESERVED METHANOL FOR SALE TO INTERSTATE**

MIC did "reserve" methanol in its inventory for delivery to Interstate. When MIC agreed to sell the methanol to Interstate, the barge was part of MIC's floating inventory -- that is, MIC listed the methanol in its balance of inventory and planned to

7

deliver it to Interstate as per the agreement. <u>Ferguson-Steger Reply Aff.</u> at ¶ 4. It is impractical for MIC to keep methanol on its inventory indefinitely once it receives a shipment from a supplier. <u>Id.</u> at ¶ 5. Instead, MIC arranges to sell the methanol based on the commitments it receives from its suppliers, as it did with Interstate. <u>Id.</u> Even so, MIC's inventory records show that it had sufficient methanol in its inventory to deliver to Interstate on and after December 20, 2007. <u>Id.</u> at ¶ 4 and Ex. 3.

Interstate offers no reasonable basis to dispute this fact. Interstate's argument that MIC had not yet "loaded" the methanol from its supplier indicates that Interstate expects MIC to break its contracts with suppliers any time a customer seeks to back out of an agreement. This expectation, again, runs counter to the purposes of the U.C.C. and settled contract law. It also fails to challenge MIC and Interstate's agreement on the key contractual terms and Interstate's failure to perform.

6. **COMMERCIALLY REASONABLE MITIGATION**

Interstate has not shown a failure by MIC to properly mitigate its damages. In late December 2007, by all accounts, prices were falling in the spot methanol market. They continued to do so throughout early 2008. <u>Ferguson-Steger Reply Aff.</u> at ¶¶ 19-20. Had MIC delayed further in selling the barge Interstate

8

refused to purchase, it would have incurred further damages. <u>Id.</u> at ¶ 20.

The Jim Jordan & Associates, LLP Global Methanol Report submitted by Interstate (<u>Puntureri Aff.</u>, Ex.) is not a definitive statement of the price of methanol on the spot market in December 2007. <u>Ferguson-Steger Reply Aff.</u> at ¶ 17. As shown by the DeWitt Methanol Newsletter covering the same time period, the price of methanol did indeed go down to $2.05 per gallon at the end of December 2007. <u>Id.</u> at ¶ 18 and Ex. 4.

MIC's sale of the barge to Tauber Petrochemical Company ("Tauber") was not, as Interstate suggests with no basis, made at a low price "based upon other business consideration." <u>Def. Mem.</u> at 20. Tauber and MIC are, in fact competitors. <u>Ferguson-Steger Reply Aff.</u> at ¶ 21.

Once it became clear that Interstate was not going to perform the purchase contract, MIC, facing falling methanol prices, had to arrange a sale of the barge of methanol as quickly as possible. <u>Id.</u> at ¶ 22. The most efficient way to do this, and the way MIC makes many sales, was through an independent broker, who received a commission for arranging the sale. <u>Id.</u> This broker connected MIC as a seller with Tauber as a buyer, for the highest price possible at the time. <u>Id.</u>

MIC would have no reason to sell for less than the highest available price.

## CONCLUSION

The only material issues of fact in this case are whether the parties agreed to key terms of the contract and whether Interstate refused to perform. Interstate disputes neither.

For the reasons given here and in our main brief, plaintiff's motion for summary judgment should be granted.

Dated:   New York, New York
         April 18, 2008

Respectfully submitted,

KORNSTEIN VEISZ WEXLER & POLLARD, LLP

_____
By:  Daniel J. Kornstein (DK - 3264)
     Amy C. Gross (AG - 8836)

757 Third Avenue
New York, New York 10017
(212) 418-8600

Attorneys for Plaintiff