UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MITSUBISHI INTERNATIONAL CORPORATION,

                Plaintiff,

-against-

INTERSTATE CHEMICAL CORPORATION,

                Defendant.

08 Civ. 00194 (JSR)(GWG)

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S LATEST MOTION FOR SUMMARY JUDGMENT**

SIMON·LESSER PC
420 Lexington Avenue
New York, New York 10170
212.599.5455

# TABLE OF CONTENTS

                                                                                                                                               Page

TABLE OF CONTENTS .................................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii, iii

PRELIMINARY STATEMENT .................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................... 1

ARGUMENT .................................................................................................................................. 2

      A.      The Summary Judgment Standard ................................................................... 2

      B.      There Remains Disputed Issues of Fact Concerning Whether Interstate's Inability to Take Delivery of the Barge Was Excused Based on Industry Practice ............................................................................................................ 3

            1.    There Is Evidence In The Record That MIC Acknowledged Interstate's Position Regarding Usage of Trade ....................................... 5

            2.    Interstate's Disclosures Also Raise Triable Issues of Fact ................... 9

            3.    Preclusion of the Use of the Witnesses' Affidavits In Opposition To MIC's Latest Summary Judgment Motion Is Inappropriate ......... 13

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES

**Case law**                                                                                                              **Page(s)**

*Arbittier v. Russo*, 84 Civ. 6352 (JFK),
1985 U.S. Dist. LEXIS 20571 (S.D.N.Y. Apr. 19, 1985) .................................................................. 10

*Atronic Int'l, GmbH v. SAT Semispecialists of Am., Inc.* 2007 U.S. Dist.
LEXIS 64185, 63 U.C.C. Rep. Serv. 2d (CBC) 855 (E.D.N.Y. Aug. 9, 2007) .............................. 9

*Bank of China v. NBM LLC,* 359 F.3d 171 (2d Cir. 2004) ......................................................... 12, 14

*Bazak Int'l Corp. v. Tarrant Apparel Group*,
378 F.Supp.2d 377 (S.D.N.Y. 2005) ............................................................................................. 10

*Cable-Wiedemer, Inc. v. A. Friederich and Sons Company,*
71 Misc.2d 443, 336 N.Y.S.2d 139 (Sup. 1972) ............................................................................. 9

*Dawson v. County of Westchester*, 373 F.3d 265 (2d Cir. 2004) ...................................................... 3

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) ........................................................... 14

*Didzbalis v. Sheridan Transp. Co.*, No. Civ. 4329 (JCF),
2002 U.S. Dist. LEXIS 22378 (S.D.N.Y., Nov. 19, 2002) ............................................................ 13

*Frye v. State of New York*, 192 Misc. 260, 78 N.Y.S.2d 342, (Ct. Claims 1949) ............................ 9

*Gorman-Bakos v.*
*Cornell Co-op Extension of Schenectady County*, 252 F.3d 545 (2d Cir. 2001) ............................ 2

*Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) ........................................................... 2

*Hall v. Briggs*, 216 F.3d 1072 (2d Cir. June 8, 2000) ..................................................................... 13

*In re Barney Schogel, Inc.*, 12 B.R. 697 (Bankr., S.D.N.Y. 1981) .................................................. 13

*Kapps v. Wing*, 404 F.3d 105 (2d Cir. 2005) ..................................................................................... 2

*LaFond v. General Physics Services Corp.*, 50 F.3d 165 (2d Cir. 1995) .......................................... 3

*Lore v. City of Syracuse*, 05 Civ. 1833
2005 U.S. Dist. LEXIS 30328 (N.D.N.Y. Nov. 17, 2005) ............................................................ 15

# TABLE OF AUTHORITIES
(continued)

*Outley v. City of New York*, 837 F.2d 587 (2d Cir. 1988) .................................................................. 15

*Piesco v. New York, Dep't of Personnel*, 933 F.2d 1149 (2d Cir. 1991) ............................................ 3

*Pollack v. Safeway Steel Products, Inc.*, 03 Civ. 4067
2007 U.S. Dist. LEXIS 24746 (S.D.N.Y., Mar. 30, 2007) .................................................................. 14

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ..................................................... 3

*Schwab v. Philip Morris USA, Inc.*, 04 Civ. 1945
2005 U.S. Dist. LEXIS 23027 (E.D.N.Y. Sept. 22, 2005) ................................................................. 12

*Sec. Ins. Co. of Hartford v. Old Dominion
Freight Line, Inc.*, 391 F.3d 77 (2d Cir. 2004) .................................................................................. 2

*Sologub v. City of New York*, 202 F.3d 175 (2d Cir. 2000) ............................................................... 3

*Stepak v. Aetna Life & Cas. Co.*,
Civ. No. H:90CV00886 (AVC), 1994 WL 858045 (D. Conn. Aug. 29, 1994) ................................. 10

**Statutes**

UCC § 1-205 .................................................................................................................................. 4, 9

UCC § 2-202 .................................................................................................................................. 4, 9

**Rules**

Fed. R .Civ. P. 26(a) ........................................................................................................... 11, 12, 13, 14

Fed. R. Civ. P. 37(c) ......................................................................................................................... 14

## PRELIMINARY STATEMENT

Defendant Interstate Chemical Corporation ("Interstate") respectfully submits this Memorandum of Law in opposition to the second motion filed by plaintiff Mitsubishi International Corporation ("MIC") for summary judgment in this case.

MIC filed a previous motion for summary judgment at the outset of the case. That motion was denied by the Court by its May 6, 2008 Order and May 18, 2008 Memorandum Decision. MIC's 8/14/08 56.1(a) Statement Exs. L and M. In its May 18, 2008 Memorandum Decision, the Court concluded that "there are disputed issues of fact precluding a grant of summary judgment on MIC's breach of contract claim." (May 18 Memorandum Decision at 8). The Court also found "a disputed issue of fact with regard to damages." *Id.* at 9.

MIC now seeks summary judgment a second time, but this time only partial summary judgment as to Interstate's alleged liability for breach of contract. MIC's latest motion concedes that there are issues of fact on the issue of the amount of damages, if any, MIC can recover as a result of the alleged breach by Interstate. *See* MIC's Brief at 3.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court is fully familiar with the factual background of this U.C.C. dispute. Interstate respectfully refers the Court to its April 14, 2008 Memorandum of Law in opposition to MIC's previous summary judgment motion as well as the Court's May 18, 2008 Memorandum Opinion. *See* MIC's 8/14/08 56.1(a) Statement Exs. G and M, respectively.

# ARGUMENT

A. **Summary Judgment Standard**

"Summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82 (2d Cir. 2004). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Id.* (*quoting Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996), *cert. denied*, 517 U.S. 1190 (1996)).

"The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sec. Ins. Co. of Hartford*, 391 F.3d at 83; *see also Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005)("In determining whether there are genuine issues of material fact, we draw all permissible inferences in favor of the non-moving party.")

"Assessments of credibility and choices between conflicting versions of events are matters for the jury, not for the court on summary judgment. Any weighing of the evidence is the prerogative of the finder of fact, not an exercise for the court on summary judgment." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 558 (2d Cir. 2001). Moreover, in assessing the record to determine whether material

facts are in dispute, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

As the non-movant, Interstate "will have [its] allegations taken as true, and will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004); *see also Piesco v. New York, Dep't of Personnel*, 933 F.2d 1149, 1154 (2d Cir. 1991)("The party who defended against the motion for summary judgment will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant.").

The trial court's role at summary judgment "is carefully limited to discerning whether there are any issues of material fact to be tried, not to deciding them." *LaFond v. General Physics Services Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). "When reasonable persons applying the proper legal standards, could differ in their responses to the question [raised in the] case on the basis of the evidence presented, the question is one for a jury and summary judgment therefore would be inappropriate." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000).

Here, based upon this controlling standard, MIC's latest motion for partial summary judgment should be denied.

**B.    There Remain Disputed Issues of Fact Concerning Whether Interstate's Inability to Take Delivery of the Barge Was Excused Based on Industry Practice**

In its May 18, 2008 Memorandum Decision, the Court determined that under the U.C.C.'s "merchant memorandum" rule, "the e-mail in which MIC 'confirm[ed] 10mb @

3

$2.55/gal loading Dec 20 or later,' which includes a quantity term – constitutes a contract enforceable against Interstate despite Interstate's failure to sign any writing." (May 18 Memorandum Decision at 4).

Notwithstanding its finding that the one sentence e-mail constitutes an enforceable contract, this Court otherwise made clear:

> This, however, is not the end of the inquiry, as the Court must determine not only that an enforceable contract existed, but also what terms that contract contained. Section 2-202 of the U.C.C. provides that "terms with respect to which the confirmatory memoranda of the parties agree may be explained or supplemented by course of dealing or usage of trade." N.Y. U.C.C. § 2-202(a). "Usage of trade," in turn, is defined as "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." N.Y. U.C.C. § 1-205(2). "The existence and scope of such a usage are to be proved as facts." *Id.*
>
> Interstate argues that under section 2-202, the contract terms discussed in Ferguson-Steger's and Cirillo's conversation and contained in the confirmatory email should be supplemented with terms reflecting the custom and practice of the chemical sales industry. Specifically, Interstate alleges that in the chemical sales trade, "either the buyer or seller to a bulk chemical procurement transaction [may] cancel before delivery based on any cause beyond their reasonable control." Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Mem.") at 16.
>
> To support its view of chemical sales usage of trade, Interstate provides a number of affidavits from participants in the industry.

(May 18 Memorandum Decision at 5).

After addressing the substance of those affidavits, the Court concluded that Interstate's evidence of trade usage, at the very least, created "disputed issues of fact precluding a grant of summary judgment on MIC's breach of contract claim." (May 18 Memorandum Decision at 8).

4

In its latest motion, MIC now argues that Interstate "has produced no evidence to support its industry custom and usage argument." (MIC Br. at 1). This argument obviously ignores the evidence already proffered by Interstate in opposition to MIC's prior motion. It also ignores evidence adduced by Interstate concerning MIC's acknowledgment that industry practice excuses a party's performance "for any delay of or failure to perform its obligations for any cause beyond its reasonable control."

1.   **There Is Evidence In The Record That MIC Acknowledged Interstate's Position Regarding Usage of Trade**

MIC argues that "Interstate must establish either that the party sought to be bound was aware of the custom, or that the custom's existence was so notorious that it should have been aware of it." (MIC Br. at 11).

MIC, however, ignores the evidence in the record that it acknowledged that the applicable trade custom excuses a party's performance "for any delay of or failure to perform its obligations for any cause beyond its reasonable control." Specifically, the "General Terms and Conditions of Sale" that MIC proposed to Interstate included the provision that:

> FORCE MAJEURE: Seller shall not be liable for any delay of for failure to perform its obligations hereunder for *any cause beyond its reasonable control*, which affects Seller or any other person (whether known or unknown to Buyer) involved in the sale, manufacturing, supply, shipment or delivery of the Goods. Shipment or delivery dates shall be extended for a period equal to the time lost by reason of any such cause; provided, however, that if any such delay exceeds ninety (90) days, either party shall have the right to cancel this Contract with respect to such shipment or delivery by written notice to the other party without any liabilities to the other party. Force majeure shall not excuse any nonpayment by Buyer. Except as otherwise provided herein, U.C.C. section 2-615 shall govern the rights of both parties hereto in the event of such delay or non-performance.

(MIC 000006-9)(Interstate 8/26/08 56.1(b) Statement Ex. D)(emphasis added).

5

While this proposed term only sought to relieve the "Seller" of its obligations as a result of "any cause beyond its reasonable control, which affects Seller or any other person (whether known or unknown to Buyer) involved in the sale, manufacturing, supply, shipment or delivery of the Goods," it otherwise supports Interstate's position that the scope of the industry practice *force majure* is to relieve a party's obligations for "any cause beyond their reasonable control."

MIC's Rule 30(b)(6) designee, Thomas Reszler, the Department manager for MIC's Methanol and Ethanol Department, testified that "General Terms and Conditions of Sale" that MIC proposed to Interstate, including the clause quoted above, "are fairly standard" in the industry. *See* Interstate 8/26/08 56.1(b) Statement ¶ 25.

Mr. Reszler also testified with respect to the application of this "fairly standard" industry practice. Although Mr. Reszler "could not recall" a situation like that presented here where a customer was seeking to cancel a purchase order due to U.S. Coast Guard restrictions preventing delivery of the methanol barge, he otherwise testified that the "any cause beyond their reasonable control" language in MIC's "General Terms and Conditions of Sale" also applied to MIC's customers who experience problems beyond their reasonable control:

> Q: Do you recall receiving information about Interstate Chemical having trouble with the order that was placed in early December?
>
> A: Yes.
>
> Q: Who did you receive that information from?
>
> A: Mr. Ferguson-Steger.
>
> Q: Look at Bates page 12, please. This appears to be an e-mail string, the top e-mail from Mr. Steger to you on December 18th, 2007 at approximately 6:40 p.m. attaching an e-mail he received from Ms. Cirillo earlier that day.

|   |   |
|---|---|
|   | Is that how you first received information from Mr. Steger about the trouble that Interstate was reporting? |
| A: | He might have mentioned it orally before, I don't recall. |
| Q: | Do you recall receiving this e-mail? |
| A: | Yes. |
| Q: | I take it from just looking at the e-mail that Mr. Steger was looking to you to make the decision as to how to respond to Interstate? |
| A: | Correct. |
| Q: | Did you provide him with directions on how to proceed? |
| A: | Yes. |
| Q: | What did you say? |
| A: | I agreed with the statement that we could – if it helped Interstate – delay the shipment later, as long as they would fulfill their obligations. |

\*      \*      \*

|   |   |
|---|---|
| Q: | Look at bates Page 54, specifically the top e-mail in this e-mail string reflected on the page which appears to be a response from you at 7:30 on December 18th to Mr. Steger's e-mail to you; is that correct? |
| A: | Correct.[1] |
| Q: | When you say "we can delay the shipment, of course," what type of delay did you contemplate? |

---

[1]    The e-mail exchange between Messrs. Ferguson-Steger and Reszler was as follows: on December 18, 2007 at 6:40 p.m., Mr. Ferguson-Steger forwarded Interstate's request to "cancel this barge" due to the Coast Guard problem to Mr. Reszler with the note:

> Pls see email below. I think we should tell them we can push it to next month but keep the same price?

Shortly thereafter, Mr. Reszler responded to Mr. Ferguson-Steger:

> We can delay the shipment of course, but no way to cancel.

(MIC 000054)(Interstate 8/26/08 56.1(b) Statement Ex. D).

7

A: It depends on what they need. Typically when companies have problems, we are usually willing to cooperate with them and to – so it could be in a week to a month. It all depends.

Q: I take it that this was not the first time in your experience with Mitsubishi International Corporation that a party to an agreement with Mitsubishi International Corporation had trouble or had a problem?

A: No. There are barge delays because of weather, so we have to be able to be a bit flexible.

Q: Have you ever experienced, either on the purchasing side or the selling side, difficulty with the United States Coast Guard?

A: No.

Q: You never had any Coast Guard issues in any of the ports?

A: Not that I recall.

Q: Never had any Coast Guard issues with any of your customers' facilities?

A: Not that I recall.

Q: Aside from Coast Guard issues, Department of Homeland Security issues, anything like that?

A: Not that I can recall.

Q: Have you ever dealt with any type of government regulations, problems with respect to any shipment on the buying side or on the selling side?

A: I don't think so.

Q: Aside from weather, do you recall, as you sit here today, in your approximate eight to nine years worth of experience what, if any, other types of problems you have encountered in your career?

A: We could have a [customer] who has a plant problem and has shut down and needs to delay.

Q: Any others?

> A: We could have, on the other side, the supplier who has a vessel delay and is not able to supply on time, and asks us to delay. That's the most obvious that comes to mind.

(Reszler Dep., Interstate 56.1(b) Statement Ex. F at 46:20-48:19).

Interstate respectfully submits that Mr. Reszler's deposition testimony, viewed in the light most favorable to Interstate, raises a triable issue of fact concerning MIC's acknowledgment of the "fairly standard" industry practice that permits at least one party to a "spot" contract to cancel before delivery due to "any cause beyond its reasonable control." It should be for the jury to determine whether this acknowledgement by MIC support's Interstate's position concerning the scope of the relevant trade usage applicable to both parties to the transaction.

### 2. Interstate's Disclosures Also Raise Triable Issues of Fact As The Court Has Previously Found

MIC also argues that Interstate "has produced no evidence to support its industry custom and usage argument." (MIC Br. at 1). This contention not only ignores Mr. Reszler's deposition testimony, it also ignores the affidavit and declaration testimony submitted by Interstate in opposition to MIC's prior summary judgment motion.

Interstate respectfully disagrees with MIC's core contention that evidence of trade usage under N.Y.U.C.C. §§ 1-205(2) and 2-202 "must" be submitted through expert testimony. (MIC Br. at 13). There is no such requirement set forth in those U.C.C. provisions. New York state courts have held otherwise. *See Cable-Wiedemer, Inc. v. A. Friederich and Sons Company,* 71 Misc.2d 443, 445, 336 N.Y.S.2d 139, 141 (N.Y. Co. Ct. 1972) ("[T]rade usage would have to be demonstrated by something more than oral argument. The existence and scope of such a usage are to be proved as facts."); *see also Frye v. State of New York,* 192 Misc. 260, 265, 78 N.Y.S.2d 342, 348 (Ct. Cl. 1948)

9

("Usage is a matter of fact, not of opinion, and it is to be established or negatived in all its essentials, as well as to knowledge as to any other, by the same character and weight of evidence as are necessary to maintain other allegations of fact."); *see also Atronic Int'l, GmbH v. SAT Semispecialists of Am., Inc.*, 03 Civ. 4892, 2007 U.S. Dist. LEXIS 64185 * 23, fn. 5 (E.D.N.Y. Aug. 29, 2007)("A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage *are to be proved as facts*.")(emphasis in original).

Indeed, courts have denied summary judgment based upon disputed issues of fact concerning the existence and scope of trade usage presented through fact, and not expert opinion, testimony. *See Bazak Int'l Corp. v. Tarrant Apparel Group*, 378 F.Supp. 2d 377, 390 (S.D.N.Y. 2005)("The court finds that Bazak has presented adequate evidence to demonstrate a genuine issue of fact concerning trade usage that, if found by a jury, could demonstrate the company's intent to be bound."); *see also Arbittier v. Russo*, 84 Civ. 6352 (JFK), 1985 U.S. Dist. LEXIS 20571 *2 (S.D.N.Y. Apr. 19, 1985)("There is a genuine issue concerning the terms of the agreement between plaintiff and defendant. In particular, the parties dispute the usage of the trade and their course of dealing, evidence of which is normally read into the contract for purposes of ascertaining the meaning of its language. This is such even if usage of trade or course of dealing contradicts the apparently unambiguous language of the writing.").

Nonetheless, MIC argues that the Court should now completely disregard Interstate's affidavit and declaration testimony "in the absence of proper expert disclosure." (MIC Br. at 12). For this argument, MIC cites *Stepak v. Aetna Life & Cas.*

10

*Co.*, Civ. No. H:90CV00886 (AVC), 1994 U.S. Dist. LEXIS 15559 (D. Conn., Aug. 29, 1994). However, in that case, the affidavit (and identification of the witness' identity) was only first delivered by the plaintiff after the close of discovery and in response to the defendant's summary judgment motion.

Here, of course, Interstate's disclosures were delivered at the outset of the case in response to MIC's prior summary judgment motion. The affidavits and declarations submitted by Interstate in opposition to that motion four (4) months ago identified the witnesses Interstate was relying upon to present evidence of industry custom and usage in satisfaction of Rule 26(a)(2)(A), as well as the substance and foundation for their testimony.

To the extent that MIC now argues that in addition to the identification of these witnesses and the substance of their affidavit/declaration testimony, Interstate was also obligated to provide a "report" under Rule 26(a)(2)(B), Interstate respectfully disagrees as these witnesses were not "retained or specifically employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony."

The Second Circuit has said the following about the requirement of a formal expert "report" under Rule 26(a)(2)(B):

> Notably, although defendants were entitled to notice, pursuant to Rule 26(a)(2)(A), that Huang would testify as an expert, they were not entitled to an expert report under Rule 26(a)(2)(B). This Rule only requires "a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony" to prepare a signed written report. Where the witness is not specially retained or employed to give expert testimony, or does not regularly give expert testimony in his or her capacity as an employee, no expert report is required. *See Lewis v. Triborough Bridge & Tunnel Auth.*, 2001 U.S. Dist. LEXIS 64, No. 97 Civ. 0607, 2001 WL 21256, at * 1

11

> (S.D.N.Y. Jan. 9, 2001)("It is well established that Fed. R. Civ. P. 26(a)(2) only requires a written report for a witness retained or specially employed to provide expert testimony in the case, or whose duties as a party's employee regularly involve giving expert testimony."); *Peck v. Hudson City Sch. Dist.*, 100 F. Supp. 2d 118, 121 (N.D.N.Y. 2000) ("The plain language of Fed. R. Civ. P. 26(a)(2) only requires a written report for a witness retained or specially employed to provide expert testimony in the case, or whose duties as a party's employee regularly involve the giving of expert testimony."); *Kent v. Katz*, 2000 U.S. Dist. LEXIS 22034, No. 2:99 Civ. 189, 2000 WL 33711516, at *1 (D. Vt. Aug. 9, 2000) ("The structure of Rule 26(a)(2) provides a clear distinction between the retained class of experts and the unretained class of experts. . . . This distinction protects experts from preparing reports when they are not retained to do so and when it is outside the scope of their regular duties." (citations and quotations omitted)); *Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995) (same). Because Huang was not specially retained to provide expert testimony, and his duties as an employee of Bank of China do not regularly include giving expert testimony, Rule 26(a)(2)(B) does not apply.

*Bank of China v. NBM LLC*, 359 F.3d 171, 182 at fn. 13 (2d Cir. 2004); *see also Schwab v. Philip Morris USA, Inc.*, 04 Civ. 1945, 2005 U.S. Dist. LEXIS 23027 (E.D.N.Y., Sep't 22, 2005)("In terms, Rule 26(a)(2)(B) does not apply because these experts were not "retained or specially employed to provide expert testimony in the case [nor do their] duties as an employee of the party regularly involve giving expert testimony.").

Here, none of the Interstate affiants were "retained or specially employed to provide expert testimony." Mr. Puntureri, Interstate's President, is not employed to "regularly give expert testimony." (Interstate 8/26/08 56.1 Statement Ex. B). Interstate's other affiants, Messrs. Jukiewicz and Swinderman, were not "retained or employed" by Interstate to give expert testimony; indeed, they are not receiving any compensation or fee from Interstate in connection with their testimony concerning usage of trade. (Interstate 8/26/08 56.1 Statement Ex. B).

In any event, the witnesses' disclosures provided to MIC at the outset of the case certainly identified the substance of their testimony as well as their background in the

12

industry which is the foundation for such testimony. Accordingly, MIC's argument that "Interstate has not offered expert evidence of any stripe" (MIC Brief at 12) is hyperbole.

Moreover, despite the fact that these disclosures were submitted to MIC in response to its prior summary judgment motion, MIC did not seek any further discovery concerning these disclosures. (Interstate 8/26/08 56.1(b) Statement ¶ 24). Indeed, MIC deliberately chose not to conduct a single deposition in this case. *Id.*

The other cases MIC cites are also clearly distinguishable from the facts and procedural history here. MIC cites *In re Barney Schogel, Inc.*, 12 B.R. 697 (Bnkr., S.D.N.Y. 1981) where the bankruptcy court, as the trier-of-fact on the debtor's application to expunge a creditor's claim, refused to accord any weight to the testimony of the debtor's president concerning trade usage because of the debtor's "failure to produce *any witnesses* to support" its president's testimony. *Id.*, 12 B.R. at 709 (emphasis added).

MIC also cites *Didzbalis v. Sheridan Transp. Co.*, 00 Civ. 4329, 2002 U.S. Dist. LEXIS 22378 (S.D.N.Y., Nov. 19, 2002) and *Hall v. Briggs*, 99 Civ. 138, 2000 U.S. App. LEXIS 13554 (2d Cir., June 8, 2000). However, in those non-U.C.C. cases, the courts precluded trial testimony from "expert" witnesses never identified during discovery.

Here, in contrast, the identity of Interstate's witnesses, and the substance and foundation of their testimony, was disclosed at the outset of the case in opposition to MIC's prior summary judgment motion.

3.   **Preclusion of the Use of the Witnesses' Affidavits In Opposition to MIC's Latest Summary Judgment Motion Is Inappropriate**

Although MIC has not made a motion to preclude the use of Interstate's trade usage testimony, its latest summary judgment motion essentially asks the Court to ignore

13

this testimony because a separate "report" was not supplied under Rule 26(a)(2)(B). Even if MIC is correct that in addition to the affidavits and declarations, Interstate was also required to separately deliver a "report" under Rule 26(a)(2)(B), preclusion of the witness' testimony in opposition to MIC's latest motion is not appropriate.

Rule 37(c)(1) provides that "a party that *without substantial justification* fails to disclose information required by Rule 26(a) . . . is not, unless such failure is *harmless*, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1)(emphasis added). Yet even where "there is no substantial justification and the failure to disclose is not harmless," preclusion under Rule 37 is not automatic or "mandatory." *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 297 (2d Cir. 2006).

Here, Interstate respectfully submits that it had justification for not supplying a separate "report" under Rule 26(a)(2)(B) in addition to its previously disclosed sworn witness statements in that Mr. Puntureri's "duties as an employee of [Interstate] do not regularly include giving expert testimony," and Messrs. Jukiewicz and Swinderman were not "specially retained to provide expert testimony." *Bank of China v. NBM LLC*, 359 F.3d at 182.

In any event, any failure to supply a "report" for these witnesses in addition to their affidavits and declarations was harmless as their testimony submitted in response to MIC's prior summary judgment motion provided virtually all of the disclosures required by Rule 26(a)(2)(B). *See Pollack v. Safeway Steel products, Inc.,* 03 Civ. 4067, 2007 U.S. Dist. LEXIS 24746 *10 (S.D.N.Y., Mar. 30, 2007)(refusing to preclude use of expert's affidavit where "plaintiff did not comply with Rule 26's disclosure requirements

and that it failed to disclose Pietropaolo as its exert until after the close of expert discovery" because, *inter alia,* "Pietropaolo's affidavit [in opposition to defendant's summary judgment motion] contained almost all of the information required by Rule 26."); *see also See Outley v. City of New York,* 837 F.2d 587, 590 (2d Cir. 1988) (holding preclusion is too drastic a remedy where a party identified an expert witness but failed to subsequently supplement the disclosure with additional information).

  Significantly, MIC does not contend that any alleged deficiencies in Interstate's disclosures concerning the identity and substance of its trade usage witnesses have otherwise caused it any prejudice in preparing for trial. *See, e.g., Lore v. City of Syracuse*, 00-CV-1833, 2005 U.S. Dist. LEXIS 30328 *6 (N.D.N.Y. Nov. 17, 2005)("While it may be true that plaintiff failed to adhere to the letter of the discovery rules, the court is convinced that defendants were sufficiently aware of the existence and relevance of the persons in question so that defendants are not being subjected to trial by ambush."). MIC has had the benefit of these witnesses' sworn statements since April 14, 2008. MIC could have deposed Interstate's witnesses; it chose not to. MIC could have identified a witness to refute Interstate's testimony on trade usage; it chose not to. Indeed, glaringly missing from MIC's papers is any substantive challenge to the veracity of Interstate's trade usage evidence.

## CONCLUSION

Based on the foregoing, MIC's last motion for partial summary judgment on liability should be denied. Interstate also respectfully requests such other and further relief as this Court deems just and proper.

Dated: New York, New York
       August 26, 2008

SIMON·LESSER PC

By: _____
    Leonard F. Lesser, Esq.
420 Lexington Avenue
New York, New York 10170
T:212.599.5455
F:212.599.5459
llesser@simonlesser.com

Attorneys for defendant Interstate Chemical Corporation

16